

1  MICHAEL L. TUCHIN (State Bar No. 150375)
   LAURA L. BUCHANAN (State Bar No. 156261)
2  MARTIN R. BARASH (State Bar No. 162314)
   KLEE, TUCHIN, BOGDANOFF & STERN LLP
3  2121 Avenue of the Stars, 33rd Floor
   Los Angeles, California  90067-5061
4  Telephone:   (310) 407-4000
   Facsimile:   (310) 407-9090

5  Proposed Reorganization Counsel for
   Debtors and Debtors In Possession
6
7  Debtors' Mailing Address
   9939 Norwalk Blvd.
   Santa Fe Springs, CA 90670
8
                  UNITED STATES BANKRUPTCY COURT
9
                    CENTRAL DISTRICT OF CALIFORNIA
10
                       LOS ANGELES DIVISION
11
   In re                              Case No(s).:  06-10875-EC
12
   **APX HOLDINGS, L.L.C.**           Chapter 11
13 **APX LOGISTICS, INC.**
   **APX EXPRESS, INC.**              **EMERGENCY MOTION PURSUANT TO**
14 **APX CENTRAL, INC.**              **BANKRUPTCY CODE SECTIONS 105,**
   **CTC DIRECT, INC.**               **362, 363 AND 364(c) AND (d),**
15                                    **BANKRUPTCY RULE 4000(c) AND**
   **PARCEL SHIPPERS EXPRESS, INC.**  **GENERAL ORDER 02-02 FOR ENTRY OF**
16 **VA PARCEL, L.L.C.**              **INTERIM FINANCING ORDER**
   **TEX-PACK, INC.**                 **AUTHORIZING BORROWING WITH**
17 **TEX-PACK EXPRESS, L.P.,**        **PRIORITY OVER ADMINISTRATIVE**
                                      **EXPENSES AND SECURED BY LIENS ON**
18                                    **PROPERTY OF THE ESTATE;**
                 Debtors.            **MEMORANDUM OF POINTS AND**
19                                    **AUTHORITIES IN SUPPORT THEREOF**
20
                                       **Hearing To Be Set By Court**
21
22                                   Date:    TBD
                                     Time:    TBD
23                                   Place:   Courtroom
                                              Roybal Federal Building
24                                            255 East Temple Street
                                              Los Angeles, CA 90012
25
26
27
28

83921-1

## **TABLE OF CONTENTS**

Page

I. STATEMENT OF FACTS ................................................................. 5

   A.   General Background. ........................................................... 5

   B.   The Debtors and Their Operations. .................................... 5

   C.   Description of the Debtors' Major Assets and Liabilities. ............. 7

       1.   The Debtors' Assets. ...................................................... 7

       2.   The Debtors' Liabilities. ................................................ 7

          a.   The Secured Liabilities. ......................................... 7

          b.   The Unsecured Liabilities (Trade and Subordinated Debt).......... 8

   D.   The Chapter 11 Cases. ....................................................... 8

   E.   The Debtors' Immediate and Critical Need for Debtor in Possession Financing. ...................................................................... 9

   F.   The Stipulated Order. ......................................................... 12

II. ARGUMENT ............................................................................... 21

   A.   The Debtors Have Satisfied the Legal Requirements for Approval and Entry of the Stipulated Order. ............................................. 21

   B.   The Stipulated Order is Supported by Sound Business Judgment. ............ 23

   C.   The Financing Under the Stipulated Order Should be Approved and the Stipulated Order Entered. ....................................................... 24

III. CONCLUSION ............................................................................. 26

KLEE, TUCHIN, BOGDANOFF & STERN LLP
2121 AVENUE OF THE STARS, 33RD FLOOR
LOS ANGELES, CALIFORNIA 90067-5061
TELEPHONE: (310) 407-4000

# TABLE OF AUTHORITIES

## FEDERAL CASES

Page

In re Ames Department Stores, Inc.,
    115 B.R. 34 (Bankr. S.D.N.Y. 1990)................................................20, 21, 22, 23

Anchor Savings Bank FSB v. Sky Valley, Inc.,
    99 B.R. 117 (N.D. Ga. 1989)..............................................................................21

Bray v. Shenandoah Federal Sav. & Loan Association (In re Snowshoe Co.),
    789 F.2d 1085 (4th Cir. 1986) .......................................................................20-21

In re Ellingsen MacLean Oil Co.,
    834 F.2d 599 (6th Cir. 1987) ..........................................................................23-24

In re FCX, Inc.,
    54 B.R. 833 (Bankr. E.D.N.C. 1985).............................................................23-24

In re Garland Corp.,
    6 B.R. 456 (B.A.P. 1st Cir. 1980) .......................................................................20

Harvis Trien & Beck, P.C. v. Federal Home Mortgage Corp.
    (In re Blackwood Assocs.. L.P.),
    187 B.R. 856 (Bankr. E.D.N.Y. 1995) ................................................................23

In re Quigly Gen. Elect. Co. (In re Electric City, Inc.),
    43 B.R. 336 (Bank. W.D. Wash. 1984) ...............................................................23

In re Reading Tube Indus.,
    72 B.R. 329 (Bankr. E.D. Pa. 1987) ...................................................................21

Richmond Leasing v. Capital Bank,
    762 F.2d 1303 (5th Cir. 1985)..............................................................................21

RTC v. Official Unsecured Creditors' Committee (In re Defender Drug Stores, Inc.),
    145 B.R. 312 (B.A.P. 9th Cir. 1992) ...................................................................23

In re Sky Valley, Inc.,
    100 B.R. 107 (Bankr. N.D. Ga. 1988) .................................................................21

In re Stein 7 Day, Inc.,
    87 B.R. 290 (Bankr. S.D.N.Y. 1988)...................................................................23

In re Trans World Airlines, Inc.,
    163 B.R. 964 (Bankr. D. Del. 1994).................................................................21-22

Unsecured Creditors' Comm. v. First Nat'l Bank & Trust Co. (In re Ellingsen
    MacLean Oil Co.),
    65 B.R. 358 (Bankr. W.D. Mich. 1986) ..............................................................23

KLEE, TUCHIN, BOGDANOFF & STERN LLP
2121 AVENUE OF THE STARS, 33RD FLOOR
LOS ANGELES, CALIFORNIA 90067-5061
TELEPHONE: (310) 407-4000

# FEDERAL STATUTES AND RULES

11 U.S.C. § 101............................................................................................................................4

11 U.S.C. § 105............................................................................................................................1

11 U.S.C. § 330..........................................................................................................................15

11 U.S.C. § 331..........................................................................................................................15

11 U.S.C. § 362.............................................................................................................1, 15, 16

11 U.S.C. § 363....................................................................................................................1, 17

11 U.S.C. § 363(c)(2)(B)...........................................................................................................18

11 U.S.C. § 364..........................................................................................................................19

11 U.S.C. § 364(a)......................................................................................................................19

11 U.S.C. § 364(b)......................................................................................................................20

11 U.S.C. § 364(c).............................................................................................................1, 17, 20

11 U.S.C. § 364(c)(1).................................................................................................................20

11 U.S.C. § 364(c)(2).................................................................................................................20

11 U.S.C. § 364(c)(3).................................................................................................................20

11 U.S.C. § 364(d)................................................................................................................1, 17

11 U.S.C. § 503(b)(1).................................................................................................................20

11 U.S.C. § 503(c)......................................................................................................................20

11 U.S.C. § 506(c)................................................................................................................17, 18

11 U.S.C. § 544....................................................................................................................14, 18

11 U.S.C. § 545..........................................................................................................................18

11 U.S.C. § 547....................................................................................................................14, 18

11 U.S.C. § 548....................................................................................................................14, 18

11 U.S.C. § 549....................................................................................................................14, 18

11 U.S.C. § 550....................................................................................................................14, 18

11 U.S.C. § 551....................................................................................................................14, 18

11 U.S.C. § 552(b)......................................................................................................................17

11 U.S.C. § 553....................................................................................................................14, 18

KLEE, TUCHIN, BOGDANOFF & STERN LLP
2121 AVENUE OF THE STARS, 33RD FLOOR
LOS ANGELES, CALIFORNIA 90067-5061
TELEPHONE: (310) 407-4000

83921-1

11 U.S.C. § 1107(a) ............................................................................................... 4

11 U.S.C. § 1108 .............................................................................................. 4, 22

Fed. R. Bank. P. 4000(c) ....................................................................................... 1

Fed. R. Bank. P. 4000(c)(2) ............................................................................. 1, 3

## LOCAL BANKRUPTCY RULES AND ORDERS

General Order 02-02 .................................................................................... 1, 3, 16

Local Bankruptcy Rule 4001-2 ........................................................................... 16

## SECONDARY SOURCES

3 COLLIER ON BANKRUPTCY ¶ 364.04[2][e] (15th ed. rev. 2006) .................................. 23

3 COLLIER ON BANKRUPTCY ¶ 364.04[2][f] (15th ed. rev. 2006) .................................. 23

KLEE, TUCHIN, BOGDANOFF & STERN LLP
2121 AVENUE OF THE STARS, 33RD FLOOR
LOS ANGELES, CALIFORNIA 90067-5061
TELEPHONE: (310) 407-4000

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE; THE OFFICE OF THE UNITED STATES TRUSTEE; THE DEBTORS' FORTY LARGEST UNSECURED CREDITORS; THE DEBTORS' SECURED LENDERS; AND THE PARTIES ENTITLED TO NOTICE:**

APX Holdings, L.L.C., a Delaware limited liability corporation ("APX"), joined by APX Logistics, Inc., a Delaware corporation, APX Express, Inc., a California corporation, APX Central, Inc., a Delaware Corporation, CTC Direct, Inc., a Delaware corporation, Parcel Shippers Express, Inc., a Wisconsin corporation, VA Parcel, L.L.C., a Delaware limited liability corporation, Tex-Pack, Inc., a Delaware corporation, and Tex-Pack Express, L.P., a Texas limited partnership (collectively, the "Debtors") hereby move this Court, *on an emergency basis*, pursuant to General Order 02-02, for entry of the stipulated *Interim Financing Order Authorizing Borrowing with Priority Over Administrative Expenses and Secured by Liens on Property of the Estate Pursuant to Section 364(c) of the Bankruptcy Code* (the "Stipulated Order"), as permitted by 11 U.S.C. §§ 105, 362, 363, and 364(c) and (d), Federal Rule of Bankruptcy Procedure 4000(c) and General Order 02-02, authorizing the Debtors, on the one hand, and Bank of America, N.A. as assignee of Fleet Capital Corporation (the "Lender"), the Debtors' prepetition secured lender, on the other hand, to effectuate their agreement providing for debtor in possession financing pursuant to the terms set forth in the Stipulated Order, and in accordance with the budget appended as Exhibit A to the Stipulated Order (the "Budget"). A true and correct copy of the Stipulated Order, with exhibits, is appended hereto as Exhibit 1. The facts and circumstances supporting the relief requested by this Motion are set forth in the concurrently filed *Declaration of Bradley S. Garberich in Support of Emergency First-Day Motions Pursuant to General Order 02-02* (the "Garberich Declaration").

The Stipulated Order, once approved and entered, will enable the Debtors to obtain much needed debtor in possession financing from the Lender. Among other things, the financing provided under the Stipulated Order provides for the Debtors to: (i) conduct an orderly wind-down of the Debtors' business in accordance with the Budget; (ii) pay the

KLEE, TUCHIN, BOGDANOFF & STERN LLP
2121 AVENUE OF THE STARS, 33RD FLOOR
LOS ANGELES, CALIFORNIA 90067-5061
TELEPHONE: (310) 407-4000

83921-1

1

1    Lender certain cash proceeds derived from operations when collected pursuant to certain

2    collection accounts and procedures; (iii) obtain advances from the Lender to meet the

3    Debtors' obligations in accordance with the Budget; (iv) grant certain senior liens securing

4    such loans, advances and obligations; and (v) grant super-priority administrative claim status

5    in respect of such loans, advances and obligations.

6    The Stipulated Order also provides that, subject to the terms of the Stipulated Order

7    (which include a reservation of rights on behalf of an official committee or other entity), the

8    Debtors will ratify, reaffirm and adopt certain prepetition agreements between the Debtors

9    and the Lender, including that certain Credit and Security Agreement dated as of October 29,

10   2004 (as modified, supplemented and/or restated to date and from time to time, the "Credit

11   Agreement"), a copy of which is attached hereto as Exhibit 2, between the Debtors and the

12   Lender; and other related agreements appended as exhibits to the Stipulated Order (all such

13   agreements, security agreements, financing statements and related agreements, documents,

14   notes, instruments and guarantees creating or evidencing indebtedness of the Debtors or

15   granting collateral security of the Debtors in favor of the Lender, as the same now exist or

16   may hereafter be amended, modified, supplemented, extended, renewed, restated or replaced,

17   being referred to herein, collectively, as the "Pre-Petition Agreements").  The Lender will

18   make postpetition loans and advances to the Debtors in accordance with the Budget, secured

19   by senior liens on postpetition collateral and super-priority administrative claims.

20   Unless the Court immediately approves and enters the Stipulated Order, the Debtors

21   will suffer immediate and irreparable harm.  As set forth in greater detail below, the Debtors

22   have virtually no cash to conduct an orderly liquidation of their assets, and will need to

23   expend funds in excess of their projected cash for at least the next several weeks.  The

24   Debtors require postpetition financing immediately to conduct an orderly liquidation of their

25   business in a manner that will maximize the value of their assets for creditors.  Without

26   interim authorization to obtain debtor in possession financing, the Debtors will be unable to

27   satisfy their obligations to employees, lessors, taxing authorities, and other essential

28   providers of goods and services as the Debtors wind-down and liquidate their business.  **The**

KLEE, TUCHIN, BOGDANOFF & STERN LLP
2121 AVENUE OF THE STARS, 33RD FLOOR
LOS ANGELES, CALIFORNIA 90067-5061
TELEPHONE: (310) 407-4000

1    **Debtors must fund expenses every day, on a cash on delivery basis, and therefore**

2    **urgently request that the Court set the hearing on this matter at the earliest time**

3    **possible.**

4       Bankruptcy Rule 4001(c)(2) specifically allows the Court to conduct a preliminary

5    hearing on a motion for authority to obtain credit, and the Debtors respectfully submit that

6    such a hearing must be held as quickly as possible.   Likewise, General Order 02-02

7    authorizes the holding of an emergency hearing on use of cash collateral and debtor in

8    possession financing.   Accordingly, pursuant to Bankruptcy Rule 4001(c)(2), the Debtors

9    specifically request that the Court authorize the Debtors to obtain credit pursuant to the

10    Stipulated Order in accordance with the Budget pending a final hearing, and the Debtors

11    further request that the Court schedule a final hearing on this Motion no earlier than 15 days

12    after the service of this Motion.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

KLEE, TUCHIN, BOGDANOFF & STERN LLP
2121 AVENUE OF THE STARS, 33RD FLOOR
LOS ANGELES, CALIFORNIA 90067-5061
TELEPHONE: (310) 407-4000

83921-1

3

1    **WHEREFORE**, the Debtors respectfully request that the Court grant this Motion in

2  its entirety and:

3      1.    Enter the Stipulated Order in substantially the form attached hereto as <u>Exhibit</u>

4  <u>1</u>.

5      2.    Authorize the Debtors to borrow on an interim basis and use cash collateral

6  under the terms of the Stipulated Order in accordance with the Budget and the Stipulated

7  Order pending a final hearing;

8      3.    Grant the Lender the security interests, liens, and priorities provided for under

9  the Stipulated Order;

10     4.    Set a final hearing on the financing; and

11     5.    Grant the Debtors any other and further relief that the Court deems appropriate

12  and necessary.

13  DATED: March 16, 2006

MICHAEL L. TUCHIN
LAURA L. BUCHANAN
MARTIN R. BARASH
KLEE, TUCHIN, BOGDANOFF & STERN LLP
Proposed Reorganization Counsel for
Debtors and Debtors in Possession

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*(left margin, rotated)* KLEE, TUCHIN, BOGDANOFF & STERN LLP
2121 AVENUE OF THE STARS, 33RD FLOOR
LOS ANGELES, CALIFORNIA 90067-5061
TELEPHONE: (310) 407-4000

83921-1

4

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.

### STATEMENT OF FACTS

**A.  General Background.**

The Debtors commenced these cases by filing voluntary petitions for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. (the "Bankruptcy Code").  Pursuant to Bankruptcy Code sections 1107(a) and 1108, the Debtors are now operating their businesses and managing their affairs as debtors and debtors in possession.

The facts and circumstances culminating in the filing of these chapter 11 petitions are discussed in the Garberich Declaration and the other pleadings filed by the Debtors contemporaneously herewith and, in the interest of brevity, will not be repeated here. Suffice it to say, the primary purpose of these chapter 11 cases is to wind-down and dispose of the Debtors' assets in an orderly fashion, so as to maximize value for the benefit of creditors and the estates.  The Debtors cannot offer any guarantees that those efforts will succeed — only that the Debtors will attempt to expeditiously fulfill these objectives.

**B.  The Debtors and Their Operations.**

Prior to the Petition Date, the Debtors were providers of small parcel and freight delivery services to high volume commercial customers, including retailers, e-tailers, catalog and mail order companies, television shopping channels, consumer product companies, and infomercial sellers.  The Debtors are headquartered in Santa Fe Springs, California.  All of the Debtors' real property is leased, including approximately 52 freight terminals utilized prior to the Petition Date.

Prepetition, the Debtors provided sorting and shipping services to their customers utilizing a combination of: (i) approximately 1,600 full and part-time employees, (ii) approximately 3,000 temporary employees provided by third-party providers, (iii) approximately 390 independent truckers (in some cases, using trucks owned by the Debtors), (iv) a number of large package delivery carriers (such as DHL), and (v) the United States Postal Service (the "USPS"), which provided the "last mile" of delivery to consumers.

KLEE, TUCHIN, BOGDANOFF & STERN LLP
2121 AVENUE OF THE STARS, 33RD FLOOR
LOS ANGELES, CALIFORNIA 90067-5061
TELEPHONE: (310) 407-4000

1    The Debtors' operations generally were comprised of two segments. The "origin"

2 business involved the picking up of parcels from customers, the sorting of those parcels, and

3 the delivery of those parcels to intermediate carriers and/or bulk centers ("BMCs") operated

4 by the USPS. The "destination" business involved the receipt of packages from BMCs

5 and/or intermediate carriers and the delivery of those packages to destination delivery units

6 ("DDUs") of the USPS (i.e., local post offices).

7    Shortly before the commencement of these cases on March 16, 2006 (the "Petition

8 Date"), the Debtors ceased accepting packages that were not already in transit from all but

9 one of their customers (described below) and laid off approximately 57 employees. The

10 Debtors intend to conduct an orderly wind-down in chapter 11 (albeit with a smaller

11 workforce) to ensure that as many as possible of the packages that the Debtors previously

12 accepted for delivery from their customers are timely delivered to their intended recipients

13 and that the Debtors' collection of their accounts receivable are maximized.

14    System-wide, there presently are approximately 2.7 million parcels from all of the

15 Debtors' customers either at the Debtors' facilities, in transit on the Debtors' vehicles, in

16 transit with third party providers, or on the final leg of their journey to their intended

17 recipients with the USPS. The average value of the goods in each of those parcels is $75 to

18 $100. The average revenue generated from each of these parcels is about $2.60 per parcel.

19 A substantial amount of value should be generated from the delivery of the packages in the

20 system, the collection of receivables and the orderly wind-down of the Debtors' business.

21    For approximately one month following the Petition Date, the Debtors intend to

22 continue limited operations for the sole purpose of serving one of their customers: the United

23 States Government on behalf of the Veterans Administration ("VA"). Pursuant to a federal

24 contract (the "VA Contract") among the VA, CTC Direct, Inc., and its non-debtor parent

25 CTC Holdings I, Inc., the Debtors ship prescription medication to patients of the VA

26 nationwide under the VA's prescription medication program. The Debtors receive from the

27 VA approximately 1 million packages each day for shipping to VA patients. While the

28 Debtors recognize that they must wind-down their operations, the Debtors also recognize the

KLEE, TUCHIN, BOGDANOFF & STERN LLP
2121 AVENUE OF THE STARS, 33RD FLOOR
LOS ANGELES, CALIFORNIA 90067-5061
TELEPHONE: (310) 407-4000

1  importance of preventing an interruption in the delivery of prescription medications to VA

2  patients.  Accordingly, immediately prior to the Petition Date, the Debtors provided the VA

3  with 30 days' notice of their intent to terminate services under the VA Contract (as permitted

4  by that contract), but intend to continue serving the VA during that period (unless alternative

5  arrangements can be made with the VA earlier).

6  **C.    Description of the Debtors' Major Assets and Liabilities.**

7  **1.    The Debtors' Assets.**

8  Based upon the Debtors' unaudited books and records, as of January 28, 2006, the

9  Debtors' assets totaled approximately $105.4 million at book value, including: (i)

10  approximately $46.4 million in accounts receivable (net of allowance for doubtful accounts),

11  (ii) approximately $18 million in property and equipment (net of depreciation), (iii)

12  approximately $2.4 million in "Other Assets" (e.g., refundable lease, security and utility

13  deposits), (iv) approximately $1.5 in "Other A/R" (e.g., rebates owing to the Debtors by

14  vendors), (v) approximately $0.9 million in prepaid expenses, (vi) about $16,000 in cash, and

15  (vii) other balance sheet accruals.  The Debtors also hold approximate $40 million in federal

16  net operating losses, which begin to expire in 2020.

17  **2.    The Debtors' Liabilities.**

18  Based upon the Debtors' unaudited books and records, as of January 28, 2006, the

19  Debtors' liabilities totaled approximately $145.9 million at book value, including (i)

20  approximately $40.5 million in accounts payable, (ii) approximately $27.3 million due to the

21  Lender under a secured revolving line of credit and term loans (including accrued interest),

22  (iii) approximately $38.5 million in subordinated debt (including accrued interest) owing to

23  Heritage Funds, (iv) approximately $7.6 million in subordinated debt (including accrued

24  interest) owing to unit holders and stockholders of predecessor companies and members of

25  the Debtors' management, and (v) other accrued liabilities.  In or around February 2006, the

26  Debtors borrowed another $2.4 million from one of the Heritage entities.

27  **a.    The Secured Liabilities.**

28  The Debtors' principal secured lender is the Lender under the Credit Agreement.  The

KLEE, TUCHIN, BOGDANOFF & STERN LLP
2121 AVENUE OF THE STARS, 33RD FLOOR
LOS ANGELES, CALIFORNIA 90067-5061
TELEPHONE: (310) 407-4000

83921-1

1    facilities under the Credit Agreement consist of a term loan of $1,841,000 (principal amount)

2    and revolving credit line of up to $40,000,000. Availability under the revolver is based upon

3    an advance rate of 85% of the value of the Debtors' accounts receivable, less various

4    reserves. The Credit Agreement contains a variety of restrictive covenants, including the

5    maintenance of certain financial ratios.

6    As of 2:50 p.m. Eastern Time on March 16, 2006, the balance on the revolver was

7    $22,914,270.01 (including accrued interest) and the balance on the term loan was

8    $1,334,733.38 (including accrued interest). Pursuant to the Credit Agreement, the Lender

9    asserts a security interest in substantially all tangible and intangible property of the Debtors

10    to secure repayment of the debt owing under that agreement, including accounts receivable,

11    contract rights, goods, inventory, machinery, equipment, motor vehicles, rolling stock,

12    fixtures, licenses and intellectual property. Pursuant to the cash management arrangements

13    established in accordance with the Credit Agreement, the Lender daily swept the Debtors'

14    deposits and applied them to reduce the outstanding balance of the revolver.

15    **b.    The Unsecured Liabilities (Trade and Subordinated
            Liabilities).**

16

17    As of January 28, 2006, the Debtors also had trade debt owing to entities providing

     services and goods to the Debtors of approximately $40.5 million.

18

19    The Debtors' largest unsecured creditor group is Heritage, which is comprised of

20    Heritage Fund I, L.P., Heritage Fund III, L.P., Heritage Fund IIIA, L.P., Heritage Investors

     III, L.L.C., and Heritage Fund III Investment Corp. Heritage also is the majority owner of

21    APX Holdings, L.L.C., which owns directly or indirectly all of the other Debtors. As noted,

22    Heritage holds approximately $40.9 million in unsecured debt against the Debtors. The

23    Garberich Declaration contains a fuller description of Heritage's debt.

24

25    **D.    The Chapter 11 Cases.**

     The Debtors have filed these cases in order to conduct an orderly liquidation of their

26    assets, and maximize the value of those assets for the benefit of the economic stakeholders in

27    their estates. As noted above, the Debtors intend to use commercially reasonable efforts to

28

KLEE, TUCHIN, BOGDANOFF & STERN LLP
2121 AVENUE OF THE STARS, 33RD FLOOR
LOS ANGELES, CALIFORNIA 90067-5061
TELEPHONE: (310) 407-4000

1   deliver all packages that the Debtors previously have accepted for delivery, and with the

2   exception of the VA Contract, the Debtors do not intend to accept any additional packages

3   for delivery. The wind-down is expected to occur rapidly over the next thirteen weeks.

4       If packages are not delivered to their intended recipients, the consignors of those

5   goods to the Debtors undoubtedly will assert claims against the Debtors for the value of

6   those goods. As to the packages that are handled in connection with the VA prescription

7   medication program, there not only will be substantial economic liability, but inconvenience

8   and hardship to patients of the VA who do not timely receive their medications. The Debtors

9   believe that the average value of the packages that the Debtors handle on behalf of customers

10   is as much as 40 times the gross revenue generated from the successful delivery of each of

11   those packages. As a result, if the system breaks down before those packages are delivered

12   to their final destinations, the resulting damages could eliminate the ability of the Debtors to

13   recover sizeable accounts receivable from those customers.

14       The Debtors believe that the path they have chosen to wind-down their operations

15   under the auspices of chapter 11 presents the greatest likelihood of maximizing the value

16   from the Debtors' assets. The wind-down will be conducted by employees of the Debtors

17   who are knowledgeable about the Debtors' businesses and capable of implementing the

18   wind-down contemplated in the Budget efficiently. The alternative to the path chosen would

19   be a sudden shuttering of the Debtors' operations, which the Debtors believe would result in

20   millions of dollars in lost value.

21   **E.    The Debtors' Immediate and Critical Need for Debtor in Possession
          Financing.**

22

23       As noted, prepetition, pursuant to the Pre-Petition Agreements, the Lender swept the

24   Debtors' cash collections on a daily basis. Accordingly, except for the relatively small

25   amount of cash that was moving through the Debtors' cash management system immediately

26   before the filing and has not been swept by the Lender, the Debtors simply have no cash to

27   conduct this wind-down. Prior to the Petition Date, the Debtors' management and persons

28   acting on the Debtors' behalf attempted to obtain alternative financing to enable the Debtors

KLEE, TUCHIN, BOGDANOFF & STERN LLP
2121 AVENUE OF THE STARS, 33RD FLOOR
LOS ANGELES, CALIFORNIA 90067-5061
TELEPHONE: (310) 407-4000

83921-1                                   9

1    to meet their financing needs. All of the proposals contemplated some form of secured

2    credit; it was, and it remains, impossible for the Debtors to finance their operating needs

3    from an extension of unsecured credit. As the Debtors' financial condition continued to

4    deteriorate, it became self-evident that the Lender would be the only realistic source of new

5    funding.

6        The Debtors require postpetition financing immediately, among other things, to pay

7    employees and suppliers and for package deliveries. Many delivery companies and other

8    venders have required, and will continue to require, payment on a cash on delivery basis.

9    Likewise, the USPS requires same day payment of all packages presented to it for delivery.

10   These payments are effectuated each day by an automatic ACH transfer initiated by the

11   USPS. Accordingly, without interim authorization to obtain debtor in possession financing,

12   the Debtors will be unable to satisfy their obligations to employees, lessors, taxing

13   authorities, customers, the USPS, and other essential providers of goods and services that

14   enable the Debtors to maximize value from this liquidation. Consequently, absent immediate

15   authority to obtain debtor in possession financing on an interim basis, the Debtors' estates

16   would suffer irreparable harm and will have no meaningful option other than to convert these

17   cases to chapter 7. Moreover, tens-of-thousands of packages containing prescription drugs

18   and other essential items will not be delivered.

19       Following expedited and arms'-length negotiations, the Debtors and the Lender have

20   agreed to the terms of the Stipulated Order, which specifies the terms and conditions under

21   which the Lender will furnish financing to the Debtors during the wind-down period. Very

22   early on in the negotiation of this financing it became readily apparent that it would not be

23   possible to negotiate a new, comprehensive financing agreement utilizing the borrowing base

24   formulations contained in that document. Accordingly, the parties determined to tie the

25   funding to the Budget, which was prepared in consultation with management and The

26   Recovery Group, Inc., which the Lender retained a short while ago as the Debtors' liquidity

27   crisis came to a head, and which has been on site at the Debtors' premises for the past several

28   days. The Budget sets forth the Debtors' anticipated collections and revenues through the

KLEE, TUCHIN, BOGDANOFF & STERN LLP
2121 AVENUE OF THE STARS, 33RD FLOOR
LOS ANGELES, CALIFORNIA 90067-5061
TELEPHONE: (310) 407-4000

83921-1

week ending June 9, 2006 (the "Projection Period"). The Budget attempts to account for the effect the chapter 11 filings will likely have on the businesses and reasonable projections of the Debtors' cash needs. Those needs are significant, and include rent, telecommunications charges, payroll, vacation obligations to employees, taxes, professional fees and other assorted expenses.

Pursuant to the Stipulated Order, all advances received by the Debtors will be in accordance with the Budget, unless the Lender otherwise agrees in its sole discretion. The Budget specifies three types of disbursements: (1) non-discretionary items, including payroll, retention, health/dental, legal, and accrued wages/taxes/sales commission/vacation for employee expenses up to the amounts specified in the "Liquidation Expense Itemization" accompanying the Budget; (2) expense items specified in the Budget under the heading "VA Expense Itemization" and (3) discretionary expenses.

As explained in further detail below, the Lender is obligated to fund the non-discretionary items irrespective of the occurrence of an "Event of Default" or the "Expiration Date" (as such terms are defined in the Stipulated Order and summarized below), to the extent such expenses are incurred. The VA Expense Itemization represents the funds necessary to continue delivery services for the VA under the VA Contract for the thirty-day period following the Debtors' thirty-day notice of termination. Under the Stipulated Order, the Lender is obligated to fund in aggregate amount not to exceed $8 million[1] to the extent actually incurred by the Debtors irrespective of the occurrence of an Event of Default or the Expiration Date. With respect to the third and final category of expenses -- discretionary expense items in the Budget, the Lender will be obligated to fund such items only to the extent they are actually incurred by the Debtors up to the amounts specified, provided that (i)

---

[1]    The Debtors are informed that their principal equity holder, Heritage Funds, has agreed to fund $5 million of the up to $8 million in advances to be made by the Lender in connection with the costs associated with maintaining the VA Contract over the next thirty days, in the form of a junior and subordinate participatory interest in this portion of the financing facility. Heritage has no direct rights against the Debtors in connection with this participation, and the Lender will be making these and all other advances under the Stipulated Order.

KLEE, TUCHIN, BOGDANOFF & STERN LLP
2121 AVENUE OF THE STARS, 33RD FLOOR
LOS ANGELES, CALIFORNIA 90067-5061
TELEPHONE: (310) 407-4000

the Lender or its consultant The Recovery Group, Inc., has specifically approved such amounts prior to their being incurred by the Debtors, and (ii) the Debtors shall have no authority to incur such amounts from and after the occurrence of an Event of Default or the Expiration Date.

In view of the enormous challenges confronting the Debtors in these cases, the Debtors strongly believe that it is in the best interests of all parties for the Debtors to proceed cooperatively and consensually with Lender. The Stipulated Order is the product of those discussions. As reflected in the Stipulated Order, although the Lender agreed that the Debtors should use chapter 11 to conduct an orderly wind-down and disposition of assets, the Lender is not prepared to give the Debtors unfettered authority to use cash collateral for an unlimited period of time. The Debtors at this time cannot obtain additional financing from another financing source. While the Debtors could seek to use cash collateral on a non-consensual basis, obtaining non-consensual use under the circumstances would be difficult because, among other things, the Debtors are not generating new sources of revenue, but rather, are winding down their operations (and thereby consuming cash); moreover, as noted, the Debtors do not presently have sufficient cash to meet their obligations at the outset of these cases. In addition, a cash collateral battle would be time consuming and expensive and would deflect the Debtors from the primary and immediate task of marketing and selling the Debtors' assets for fair value. In view of the terms of the Stipulated Order, which are favorable and balanced, there is simply no reason for the Debtors to seek to use cash collateral on a contested basis.

**F.    The Stipulated Order.**

Because of the exigencies associated with these chapter 11 filings, the parties have negotiated and documented their agreement in the form of the Stipulated Order, which utilizes the Pre-Petition Agreements as the starting point for the financing commitment embodied in the Stipulated Order. The Lender will provide this financing pursuant to the Pre-Petition Agreements, the Budget and the Stipulated Order (collectively, the "DIP Financing Documents"). The following summarizes the principal terms of the DIP

KLEE, TUCHIN, BOGDANOFF & STERN LLP
2121 AVENUE OF THE STARS, 33RD FLOOR
LOS ANGELES, CALIFORNIA 90067-5061
TELEPHONE: (310) 407-4000

83921-1

12

Financing Documents, but is qualified in its entirety by the specific provisions of those documents:

1.    <u>Advances and Expenditures Pursuant to the Approved Budget</u>.  Provided that no event of default occurs or is continuing under the terms of the Stipulated Order, the Lender will advance funds for the Debtors' use in accordance with the Budget, which covers the period commencing with the Petition Date through and including the earlier of June 9, 2006 or the effective date of any plan of reorganization of the Debtors (the "Expiration Date").  The Debtors are permitted to make expenditures solely in accordance with the approved Budget, unless otherwise agreed to by the Lender.

As the negotiation of the Stipulated Order evolved, the parties determined to categorize the expenses associated with the liquidation of the Debtors' businesses into three categories.  The first category of expenses is denominated in the Liquidation Expense Itemization as nondiscretionary, in that if such an expense is incurred, the Lender must fund to satisfy such expense, up to the amount specified in the Budget. This category of expenses includes payroll, retention, health/dental, legal, and accrued wages/taxes/sales commission/vacation obligations to employees.  The Lender will fund such items to the extent actually incurred by the Debtors up to the amounts so specified irrespective of the occurrence of the Expiration Date or an Event of Default.

The next category of expenses is those related to the servicing of the VA Contract for the next thirty days, the VA Expense Itemization.  As to these expenses, the Lender is obligated to fund in aggregate amount not to exceed $8 million to the extent actually incurred by the Debtors irrespective of the occurrence of an Event of Default or the Expiration Date.

Finally, as to all other expense items specified in the Budget, the Lender will be obligated to fund such discretionary expense items to the extent actually incurred by the Debtors up to the amounts so specified; provided that (i) the Lender or its consultant The Recovery Group, Inc. has specifically approved such amounts prior to their being incurred

KLEE, TUCHIN, BOGDANOFF & STERN LLP
2121 AVENUE OF THE STARS, 33RD FLOOR
LOS ANGELES, CALIFORNIA 90067-5061
TELEPHONE: (310) 407-4000

1   by the Debtors, and (ii) the Debtors shall have no authority to incur such amounts from and

2   after the occurrence of an Event of Default or the Expiration Date.

3         To broadly summarize, the first two categories of expenses are non-discretionary; if

4   the expenses are incurred in accordance with the Budget, the Lender must advance fund to

5   cover them. The last category is discretionary, provided that if they are incurred with the

6   Lender's prior approval, the Lender must advance funds to cover them.

7         2.    <u>Application of Cash Collateral to Prepetition Indebtedness</u>. As a material term,

8   the Stipulated Order provides that all cash on hand as of the Petition Date, and all cash

9   collateral generated postpetition, must be remitted to the Lender for application first against,

10   and satisfaction of, loans, advances and other financial accommodations made by the Lender

11   to the Debtors in accordance with the Pre-Petition Agreements (the "Pre-Petition

12   Obligations") and only thereafter will be applied to repay any and all Obligations (as such

13   term is defined in the Credit Agreement) of the Debtors to the Lender incurred postpetition

14   pursuant to the Budget and the Stipulated Order (the "Post-Petition Obligations"). The

15   Lender will charge to the Debtors' account interest at the rate of prime rate plus three

16   percent, which is the same rate as currently exists under the Credit Agreement. These

17   payments are subject to a reservation of rights in favor of third parties, as described

18   immediately below, with respect to the Pre-Petition Obligations and liens.

19         3.    <u>Reservation of Rights</u>. The unsecured creditors committee appointed in these

20   cases shall have forty-five (45) days following its formation to commence an adversary

21   proceeding against the Lender for the purpose of challenging the validity, extent, priority,

22   perfection and enforceability of the Pre-Petition Obligations and liens. Solely in the event

23   that no committee is appointed, any person or entity other than the Debtors shall have

24   through and until the 60th day following the date of entry of the Stipulated Order by this

25   Court to file such adversary proceeding. The Stipulated Order contains broad reservations in

26   favor of parties other than the Debtors to challenge the Lender's prepetition liens and claims,

27   and by its terms does not limit the Court's ability to formulate an appropriate remedy in

28   connection therewith.

KLEE, TUCHIN, BOGDANOFF & STERN LLP
2121 AVENUE OF THE STARS, 33RD FLOOR
LOS ANGELES, CALIFORNIA 90067-5061
TELEPHONE: (310) 407-4000

4.   <u>Adequate Protection</u>.  As adequate protection for any postpetition diminution in value of Lender's interests in the Pre-Petition Collateral, to the extent thereof, the Lender will be granted a postpetition claim on a joint and several basis (the "Adequate Protection Claim") against the Debtors' estates.

5.   <u>Liens and Priorities</u>.  The Stipulated Order further provides for the granting of super priority liens and super administrative priorities to the extent postpetition indebtedness is created.  The Stipulated Order, however, provides that the liens and super administrative priorities are subject to professional fees and expenses, for all professionals employed by the estates, as set forth in the Budget.  Also, the liens are subject to valid liens existing as of the Petition Date.

6.   <u>No Security Interest with Respect to Avoidance Actions</u>.  The Stipulated Order expressly provides that the Debtors' obligations to the Lender shall not be secured by any actions under Bankruptcy Code sections 544, 547, 548, 550, 551 and 553 or recoveries upon such causes of action, but shall otherwise include all property of the estates and other causes of action of the Debtors that are not within the scope of those statutory provisions and recoveries upon such other causes of action.

7.   <u>Maintenance of Accounts and Cash Sweep</u>.   The prepetition clearing, dominion, lockbox and similar accounts maintained by or on behalf of the Debtors pursuant to the Pre-Petition Agreements at certain banking institutions for the collection of proceeds obtained in the ordinary course of the Debtors' businesses, and the payment procedures under which such accounts are administered (collectively, the "Collection Accounts and Procedures"), shall continue in full force and effect unless otherwise directed by the Lender.  From and after the date of entry of the Stipulated Order, the Debtors will remit to the Lender such cash, cash equivalents and checks as are Proceeds[2] obtained in the ordinary course of

[2]   "Proceeds" are defined in the Stipulated Order to mean any and all payments, proceeds or other consideration realized upon the sale, liquidation, collection or disposition of the Lender's collateral, whether in the ordinary course of the Debtors' businesses (including without limitation receivables and other proceeds arising from the Debtors' sales of inventory and/or performance of services) or other than in the ordinary course of the Debtors' businesses. Stipulated Order at ¶ 19.

KLEE, TUCHIN, BOGDANOFF & STERN LLP
2121 AVENUE OF THE STARS, 33RD FLOOR
LOS ANGELES, CALIFORNIA 90067-5061
TELEPHONE: (310) 407-4000

1  the Debtors' businesses in accordance with the Collection Accounts and Procedures and in

2  accordance with the terms and conditions of the Pre-Petition Agreements.

3      8.    Carve-Out.  The Stipulated Order specifies that if sufficient unencumbered

4  funds are not available from the Debtors' estates, the Debtors may use the advances from the

5  Lender to pay (i) statutory United States Trustee fees and any unpaid fees due and owing the

6  Clerk of the Court, (ii) expenses of professionals approved by orders of this Court not to

7  exceed $100,000, (iii) the allowed fees and expenses of professionals of any unsecured

8  creditors' committee appointed in these cases not to exceed $25,000, and (iv) the allowed

9  fees and expenses of any chapter 7 trustee not to exceed $25,000.  All payments received by

10  approved professionals within the scope of the Carve-Out (exclusive of prepetition retainers)

11  shall reduce the respective Carve-Out on a dollar-for-dollar basis.  However, so long as no

12  Event of Default under the Stipulated Order has occurred and be continuing, the Debtors are

13  permitted to pay (or set aside in a segregated, interest-bearing account) and the Carve-Out

14  shall include compensation and reimbursement of expenses to professionals allowed and

15  payable under Bankruptcy Code sections 330 and 331 in accordance with the Budget as the

16  same may be due and payable, and the same shall not reduce the remainder of the Carve-Out

17  or be subject to disgorgement except to the extent the Court orders disgorgement based on

18  the disallowance of such fees or expenses.

19      9.    Right to Exercise Remedies Upon Occurrence of an Event of Default.  Certain

20  "Events of Default" specified in the Stipulated Order enable the Lender to commence the

21  exercise of remedies (notwithstanding the provisions of Bankruptcy Code section 362 and

22  without application or motion, or further leave from the Court), on five (5) business days'

23  notice.  Those events include the Debtors' failure to perform any material aspect of the

24  Stipulated Order, a new breach under the Credit Agreement,  dismissal or conversion of

25  these cases, the appointment of a trustee, the proposal of a plan of reorganization that does

26  not provide for the full satisfaction of the Lender's postpetition claims, the Debtors expend

27  funds other than those set forth in the approved Budget, or the occurrence of a material

28  adverse change subsequent to the Petition Date.

KLEE, TUCHIN, BOGDANOFF & STERN LLP
2121 AVENUE OF THE STARS, 33RD FLOOR
LOS ANGELES, CALIFORNIA 90067-5061
TELEPHONE: (310) 407-4000

1    Upon the occurrence of an Event of Default and the giving proper notice thereof, the

2  Lender may exercise the following remedies: (i) the Lender will have no further obligation to

3  make loans, advances, and/or other financial accommodations to the Debtors; (ii) the Lender

4  will have the right, free of the restrictions of Bankruptcy Code section 362 (which automatic

5  stay shall be deemed to have been lifted for this purpose) or under any other section of the

6  Bankruptcy Code or applicable law or rule, to take immediate discretionary action to protect

7  the Lender's collateral from harm, theft and/or dissipation; (iii) the Debtors will immediately

8  segregate all of the Lender's collateral and shall not be permitted to use such collateral absent

9  Lender's prior written consent (subject to the Carve-Out), and the Lender may impose an

10  "administrative freeze" with respect to the Debtors' cash on deposit at the Lender; (iv) with

11  respect to the Events of Default other than those specified in Subparagraphs "(a)" through

12  "(d)" of Paragraph 15 of the Stipulated Order, the Debtors, the unsecured creditors'

13  committee or the United States Trustee will have five business days from the receipt of the

14  default notice from the Lender ("Remedy Notice Period") to cure the default (if curable) or

15  obtain an order of the Court on notice to the Lender enjoining or restraining the Lender from

16  exercising its rights and remedies based upon the Event of Default specified in the default

17  notice ("Restraint on Remedies") provided that the sole grounds on which the Debtors (only)

18  may seek a Restraint on Remedies shall be to allege either non-occurrence, non-continuance

19  (if applicable) or timely cure of the Event of Default specified in the default notice; and (v)

20  payment of any and all Obligations of the Debtors to Lender arising out of or incurred

21  pursuant to the DIP Financing Documents shall be due and payable, and Lender shall have

22  the right, free of the restrictions of Bankruptcy Code section 362 or under any other section

23  of the Bankruptcy Code or applicable law or rule, to exercise its contractual, legal and

24  equitable rights and remedies as to all or such part of the collateral as Lender, in its sole and

25  absolute discretion, shall elect: (1) with respect to the Events of Default specified in

26  Subparagraphs "(a)" through "(d)" of Paragraph 15 of the Stipulated Order, immediately

27  upon the giving of the default notice; or (2) with respect to Events of Default other than

28  those specified in Subparagraphs "(a)" through "(d)" of Paragraph 15 of the Stipulated Order,

KLEE, TUCHIN, BOGDANOFF & STERN LLP
2121 AVENUE OF THE STARS, 33RD FLOOR
LOS ANGELES, CALIFORNIA 90067-5061
TELEPHONE: (310) 407-4000

1  immediately upon expiration of the Remedy Notice Period unless a Restraint on Remedies

2  has timely been obtained from the Court; or (3) upon the occurrence of the Expiration Date,

3  immediately.

4       In addition to the preceding summary, the following specific information is provided

5  pursuant to General Order 02-02 and Local Bankruptcy Rule 4001-2:

6       (A)   Provisions that grant cross-collateralization (other than replacement liens or

7  other adequate protection).  There are no cross-collateralization provisions in the Stipulated

8  Order, but the Lender is being granted an Adequate Protection Claim.  See Stipulated Order

9  at ¶¶ 3-4.

10       (B)   Provisions or findings of fact that bind the estate or all parties in interest with

11  respect to the validity, perfection, or amount of the secured creditor's prepetition lien or debt

12  or the waiver of claims against the secured creditor.  See Stipulated Order at ¶¶ 1 & 23-24

13  (the latter containing a reservation in favor of a creditors' committee or other parties if no

14  committee is appointed).

15       (C)   Provisions or findings of fact that bind the estate or all parties in interest with

16  respect to the relative priorities of the secured party's lien and liens held by persons who are

17  not party to the stipulation, or which create a lien senior or equal to any existing lien.  See

18  Stipulated Order at ¶¶ 4-5 & 7.

19       (D)   Waivers of 11 U.S.C. § 506(c), unless the waiver is effective only during the

20  period in which the debtor is authorized to use cash collateral or borrow funds.  See

21  Stipulated Order at ¶¶ 8-9 & 22 (the waivers under sections 506(c) or 552(b) for both the

22  Debtors and other entities are with respect to any claim arising or obligation incurred during

23  the period of the financing under the Stipulated Order).

24       (E)   Provisions that operate, as a practical matter, to divest the debtor in possession

25  of any discretion in the formulation of a plan or administration of the estate or to limit access

26  to the court to seek any relief under other applicable provision of law.  See Stipulated Order

27  at ¶ 9(c) (Event of Default occurs if any plan of reorganization of any Debtor is confirmed

28  which does not provide for the payment in full of all of the postpetition obligations of Lender

KLEE, TUCHIN, BOGDANOFF & STERN LLP
2121 AVENUE OF THE STARS, 33RD FLOOR
LOS ANGELES, CALIFORNIA 90067-5061
TELEPHONE: (310) 407-4000

1    upon the effective date of such plan), at ¶ 10 (limiting the Debtors' use of the provisions of

2    Bankruptcy Code section 363, 364(c) and 364(d)), and at ¶ 14 (providing that the time of

3    payment of all obligations of the Debtors to Lender under the DIP Financing Documents

4    shall not be altered, extended or impaired by any plan of reorganization).

5        (F)    Releases of liability for the creditor's alleged prepetition torts or breaches of

6    contract.    See Stipulated Order at ¶ 23 (subject to a reservation of rights in favor of a

7    creditors' committee or other parties if no committee is appointed).

8        (G)    Waivers of avoidance actions arising under the Bankruptcy Code.    See

9    Stipulated Order at ¶ 23 (subject to a reservation of rights in favor of a creditors' committee

10   or other parties if no committee is appointed).

11       (H)    Automatic relief from the automatic stay upon default, conversion to chapter 7,

12   or appointment of a trustee.    See Stipulated Order at ¶ 16(b) & (e).

13       (I)    Waivers of procedural requirements, including those for foreclosure mandated

14   under applicable non-bankruptcy law, and for perfection of replacement liens.    See

15   Stipulated Order at ¶¶ 13 & 16(b)

16       (J)    Adequate protection provisions which create liens on claims for relief arising

17   under 11 U.S.C. §§ 506(c), 544, 545, 547, 548 and 549.    See Stipulated Order at ¶ 5 ("the

18   Collateral shall not include causes of action brought pursuant to Bankruptcy Code §§ 544,

19   547, 548, 550, 551 and 553 and recoveries upon such causes of action, but shall include other

20   causes of action of the Debtors that are not within the scope of said statutory provisions and

21   recoveries upon such other causes of action").

22       (K)    Waivers, effective on default or expiration, of the debtor's right to move for a

23   court order pursuant to 11 U.S.C. § 363(c)(2)(B) authorizing the use of cash collateral in the

24   absence of the secured party's consent.    See Stipulated Order at ¶¶ 10 & 16(c).

25       (L)    Provisions that grant a lien in an amount in excess of the dollar amount of cash

26   collateral authorized under the applicable cash collateral order.    There is no such provision in

27   the Stipulated Order.

28       (M)    Provisions providing for the paying down of prepetition principal owed to a

KLEE, TUCHIN, BOGDANOFF & STERN LLP
2121 AVENUE OF THE STARS, 33RD FLOOR
LOS ANGELES, CALIFORNIA 90067-5061
TELEPHONE: (310) 407-4000

1  creditor. <u>See</u> Stipulated Order at ¶¶ 20-22.

2        (N)    <u>Findings of fact on matters extraneous to the approval process.</u>  There is no

3  such provision in the Stipulated Order.

4        (O)    <u>Provisions that provide disparate treatment for professionals with respect to a</u>

5  <u>professional fee carve out.</u> <u>See</u> Stipulated order at ¶ 6; Budget (providing budgeted amounts

6  for official committee and Debtors' professionals, but the Stipulated Order provides at

7  paragraph 6 for professionals to benefit from the "Carve-Out," subject to the amounts

8  specified in Budget).

9        The financing to be furnished by the Lender under the Stipulated Order affords the

10  Debtors an opportunity to maximize value from the liquidation of their businesses, while

11  delivering packages containing medical and other vital supplies relied upon by tens of

12  thousands of people across the country.  To be sure, the Lender's motive in providing these

13  financial accommodations is to maximize its own recovery, and the Lender will benefit by

14  advancing funds on a postpetition basis while receiving payment of its prepetition secured

15  indebtedness.  But in doing so the estate and other creditors should be better off (or at least in

16  no worse position), for at least the following reasons: (1) reduction of the Lender's claims in

17  turn will reduce the unsecured deficiency claim which would otherwise share with unsecured

18  creditors; (2) in light of the board reservation of rights contained in the Stipulated Order to

19  challenge the Lender's prepetition liens and claims, it is in the interests of all other creditors

20  to maximize the value from the liquidation of the Debtors' assets, which value may end up

21  inuring to the benefit of creditors other than the Lender; (3) since the Lender is not receiving

22  a lien against any avoidance actions (which would otherwise be available to unsecured

23  creditors), nothing in the Stipulated Order prejudices the rights of unsecured creditors as to

24  this possible source of recovery; and (4) the Lender is funding to enable the Debtors to

25  satisfy priority employee and tax liabilities that would otherwise dilute general unsecured

26  recoveries.

27        The balance of this Motion further establishes that the Court should grant the relief

28  requested in this Motion.

KLEE, TUCHIN, BOGDANOFF & STERN LLP
2121 AVENUE OF THE STARS, 33RD FLOOR
LOS ANGELES, CALIFORNIA 90067-5061
TELEPHONE: (310) 407-4000

83921-1

20

## II.

## ARGUMENT

### A.    The Debtors Have Satisfied the Legal Requirements for Approval and Entry of the Stipulated Order.

Bankruptcy Code section 364 states that a debtor in possession that is authorized to operate its business may obtain financing either in the ordinary course of business or outside the ordinary course of business.  First, Bankruptcy Code section 364(a) allows the debtor to obtain unsecured credit and to incur unsecured debt in the ordinary course of business.  See 11 U.S.C. § 364(a).

Second, after notice and a hearing, the Court may authorize a debtor in possession to obtain financing outside the ordinary course of business.  Bankruptcy Code section 364(b) states that this financing may be allowable as an administrative expense under Bankruptcy Code section 503(b)(1).  See 11 U.S.C. § 364(b).  If the debtor in possession is unable to obtain unsecured credit allowable under section 503(b)(1) as an administrative expense, Bankruptcy Code section 503(c) allows the Court again after notice and a hearing to authorize the debtor in possession to obtain credit or to incur debt that has priority over administrative expenses under Bankruptcy Code section 503(b)(1), see 11 U.S.C. § 364(c)(1); that is secured by a lien on unencumbered estate property, see 11 U.S.C. § 364(c)(2);  or that is secured by a junior lien on encumbered estate property.  See 11 U.S.C. § 364(c)(3).

Other than the requirement of notice and a hearing, the only statutory prerequisite for obtaining credit on a secured basis is that the debtor in possession must be unable to obtain credit allowable as an administrative expense:

> If the trustee is unable to obtain unsecured credit allowable under section 503(b)(1) of this title as an administrative expense, the court, after notice and a hearing, may authorize the obtaining of credit or the incurring of debt—
>
> * * *
>
> secured by a lien on property of the estate that is not otherwise

KLEE, TUCHIN, BOGDANOFF & STERN LLP
2121 AVENUE OF THE STARS, 33RD FLOOR
LOS ANGELES, CALIFORNIA 90067-5061
TELEPHONE: (310) 407-4000

subject to a lien . . . .

11 U.S.C. § 364(c)(2).  See also In re Garland Corp., 6 B.R. 456, 461 n. 11 (B.A.P. 1st Cir. 1980) (secured credit under section 364(c)(2) is authorized, after notice and a hearing, upon showing that unsecured credit cannot be obtained); In re Ames Dept. Stores, Inc., 115 B.R. 34, 37-39 (Bankr. S.D.N.Y. 1990) (debtor must show that it has made a reasonable effort to seek other sources of financing under sections 364(a) and (b) of the Bankruptcy Code).

To demonstrate that the credit required is not obtainable on an unsecured basis, the debtor need only demonstrate "by good faith effort that credit was not available" without the protections afforded to potential lenders by section 364(c) of the Bankruptcy Code.  Bray v. Shenandoah Fed. Sav. & Loan Ass'n (In re Snowshoe Co.), 789 F.2d 1085, 1088 (4th Cir. 1986).  Thus, "[t]he statute imposes no duty to seek credit from every possible lender before concluding that such credit is unavailable."  Id. at 1088.  See also In re Ames, 115 B.R. at 40 (holding that debtor made a reasonable effort to secure financing when it selected the least onerous financing option from the two remaining lenders); In re Reading Tube Indus., 72 B.R. 329, 332 (Bankr. E.D. Pa. 1987) ("Given the 'time is of the essence' nature of this type of financing, we would not require this or any debtor to contact a seemingly infinite number of possible lenders.").  Where few lenders are likely to be able and willing to extend the necessary credit to a debtor, "it would be unrealistic and unnecessary to require [the debtor] to conduct such an exhaustive search for financing."  In re Sky Valley, Inc., 100 B.R. 107, 113 (Bankr. N.D. Ga. 1988), aff'd sub nom., Anchor Savings Bank FSB v. Sky Valley, Inc., 99 B.R. 117, 120 n. 4 (N.D. Ga. 1989).

This threshold test is certainly satisfied here.  As set forth in the Garberich Declaration, despite the Debtors' efforts, the Debtors have been unable to obtain unsecured credit to finance their operations.  Moreover, the Debtors simply cannot obtain alternative financing of the magnitude proposed under the Stipulated Order on an unsecured basis, even if the resulting claim is allowed as an administrative claim.

The alternatives to the Stipulated Order would not be beneficial to the estates or creditors.  While the Debtors could seek to use cash collateral on a non-consensual basis, any

KLEE, TUCHIN, BOGDANOFF & STERN LLP
2121 AVENUE OF THE STARS, 33RD FLOOR
LOS ANGELES, CALIFORNIA 90067-5061
TELEPHONE: (310) 407-4000

1  such use would be inadequate to cover the Debtors' needs, and the Debtors would have great

2  difficulty furnishing adequate protection to the Lender.  By the same token, as noted, the

3  Debtors believe that a fire-sale liquidation would result in severely reduced values.

4  **B.    The Stipulated Order is Supported by Sound Business Judgment.**

5  Generally, courts give broad deference to the business decisions of a debtor in

6  possession.  See, e.g., Richmond Leasing v. Capital Bank, 762 F.2d 1303, 1311 (5th Cir.

7  1985); In re Trans World Airlines, Inc., 163 B.R. 964, 974 (Bankr. D. Del. 1994) (noting that

8  an interim loan, receivables facility and asset-based facility were approved because they

9  "reflect[ed] sound and prudent business judgment ..., [were] reasonable under the

10  circumstances and in the best interest of [the debtor] and its creditors").  In particular, a

11  bankruptcy court generally will respect a debtor in possession's business judgment regarding

12  the need for a proposed use of funds.  As the court noted in In re Ames, the bankruptcy court

13  should defer to a debtor in possession's reasonable business judgment so long as the

14  proposed financing agreement does not contain terms that either leverage the bankruptcy

15  process or that benefit a third party rather than the bankruptcy estate:

16  > [A] court's discretion under section 364 is to be utilized on
17  > grounds that permit reasonable business judgment to be exercised
   > so long as the financing agreement does not contain terms that
18  > leverage the bankruptcy process and powers or its purpose is not
   > so much to benefit the estate as it is to benefit a party-in-interest.
19

20  115 B.R. at 40.

21  A debtor in possession's power to incur secured debt necessarily follows from the

22  debtor in possession's general power to operate its business in the exercise of its business

23  judgment.  See 11 U.S.C. § 1108.  Without the ability to incur secured debt, the debtor in

24  possession would be placed at a significant competitive disadvantage and its efforts to

25  reorganize or liquidate orderly could be seriously impaired.

26  In this case, the Debtors' decision to enter into the terms of the Stipulated Order

27  represents an exercise of sound business judgment in the continued operation of the Debtors'

28  businesses.  Without the financing, the Debtors cannot preserve the prospect of an orderly

KLEE, TUCHIN, BOGDANOFF & STERN LLP
2121 AVENUE OF THE STARS, 33RD FLOOR
LOS ANGELES, CALIFORNIA 90067-5061
TELEPHONE: (310) 407-4000

1  liquidation and disposition process, nor do the Debtors believe that they can effectively

2  operate by seeking to use cash collateral alone.   The Stipulated Order addresses these

3  problems by providing the Debtors with funds necessary to meet ongoing operational costs

4  to orderly wind-down the Debtors' businesses.

5  **C.    The Financing Under the Stipulated Order Should be Approved and the**
   **Stipulated Order Entered.**

6

7       Debtor in possession financing provisions such as described in Section I.F above are

8  often included in complex financing and cash collateral arrangements. The Stipulated Order

9  reflects the give and take that results from these types of negotiations.   Courts have

10 recognized that a debtor often must make significant concessions in exchange for financing.

11 See, e.g., Unsecured Creditors' Comm. v. First Nat'l Bank & Trust Co. (In re Ellingsen

12 MacLean Oil Co.), 65 B.R. 358, 365 (Bankr. W.D.. Mich. 1986), aff'd, 834 F.2d 599 (6th

13 Cir. 1987) (chapter 11 postpetition financing is "fraught with dangers for creditors . . .").

14 Accordingly, courts recognize that a debtor may need to "enter into a hard bargain with a

15 creditor in order to acquire the needed funds to complete reorganization." Id. at 365.

16      In connection with debtor in possession financing arrangements, it is not at all

17 atypical for a debtor to agree to validate a lender's prepetition lien and consent to the use of

18 proceeds to pay the lender's prepetition indebtedness. See, e.g., In re Stein 7 Day, Inc., 87

19 B.R. 290, 292 (Bankr. S.D.N.Y. 1988) (providing for validation and payment of prepetition

20 debt); In re Ellingsen MacLean Oil Co., 65 B.R. at 365, (validation of liens, repayment of

21 debt); In re Quigly Gen. Elect. Co. (In re Electric City, Inc.), 43 B.R. 336, 338 (Bankr. W.D.

22 Wash. 1984) (stipulation provided for postpetition lien and conceded validity of lien).  See

23 also 3 COLLIER ON BANKRUPTCY ¶ 364.04[2][e] (15th ed. rev. 2006).

24      Likewise, lenders often agree to subordinate or "carve-out" from their collateral funds

25 to pay professionals. See Harvis Trien & Beck, P.C. v. Federal Home Mortgage Corp. (In re

26 Blackwood Assocs., L.P.), 187 B.R. 856, 860 (Bankr. E.D.N.Y. 1995) (court advised that if

27 professionals really want to be paid they had best insist upon a "real carve out"); In re Ames,

28 115 B.R. at 40 (noting practice of district to insist on carve-out for fees in order to preserve

KLEE, TUCHIN, BOGDANOFF & STERN LLP
2121 AVENUE OF THE STARS, 33RD FLOOR
LOS ANGELES, CALIFORNIA 90067-5061
TELEPHONE: (310) 407-4000

1  adversary system).

2       Nor is it atypical for the lender to receive enhanced enforcement remedies or for

3  debtors to waive their own right to challenge lender's liens and claims.  See, e.g., RTC v.

4  Official Unsecured Creditors' Committee (In re Defender Drug Stores, Inc.), 145 B.R. 312,

5  317-18 (B.A.P. 9th Cir. 1992) (approved postpetition financing arrangement providing that

6  upon event of default under postpetition financing order, debtor would be given 30 days to

7  find alternative financing for, or a buyer of, the business, and if the debtor sold its assets, the

8  lender would be entitled to an enhancement fee of 10% of the gross consideration for the

9  assets).  See also In re Ellingsen MacLean Oil Co., 834 F.2d 599, 604, 606 (6th Cir. 1987)

10  (approving financing order in which debtor's waived right to object to lender's liens as in the

11  best interests of the estates); In re FCX, Inc., 54 B.R. 833, 841-42 (Bankr. E.D.N.C. 1985)

12  ("The provisions establishing the amount of the indebtedness, conceding the validity of the

13  lien, and releasing claims are reasonable as to the debtor, but are not reasonable with respect

14  to creditors and other parties in interest.  A reasonable period of time to determine the

15  amount and validity of the Bank's secured claim is 30 days from the date of this order.  A

16  reasonable period of time to determine the existence of claims against the Bank is 60 days.");

17  3 COLLIER ON BANKRUPTCY ¶ 364.04[2][f] (15th ed. rev. 2006) ("More modest waivers,

18  binding on nondebtor parties only after the passage of a reasonable amount of time, are

19  routinely approved.").

20       Here, the terms of the Stipulated Order not only are supported by reasonable

21  judgments, but have been approved in many other chapter 11 cases.

22

23

24

25

26

27

28

KLEE, TUCHIN, BOGDANOFF & STERN LLP
2121 AVENUE OF THE STARS, 33RD FLOOR
LOS ANGELES, CALIFORNIA 90067-5061
TELEPHONE: (310) 407-4000

83921-1

## III.

## CONCLUSION

**WHEREFORE**, the Debtors respectfully request that the Court grant this Motion in its entirety and:

1.    Enter the Stipulated Order in substantially the form attached hereto as <u>Exhibit 1</u>.

2.    Authorize the Debtors to borrow on an interim basis under the terms of the Stipulated Order and use cash collateral in accordance with the Budget and the Stipulated Order pending a final hearing;

3.    Grant the Lender the security interests, liens, and priorities provided for under the Stipulated Order;

4.    Set a final hearing on the financing; and

5.    Grant the Debtors any other and further relief that the Court deems appropriate and necessary.

DATED: March _16_, 2006

MICHAEL L. TUCHIN
LAURA L. BUCHANAN
MARTIN R. BARASH
KLEE, TUCHIN, BOGDANOFF & STERN LLP
Proposed Reorganization Counsel for
Debtors and Debtors in Possession

KLEE, TUCHIN, BOGDANOFF & STERN LLP
2121 AVENUE OF THE STARS, 33RD FLOOR
LOS ANGELES, CALIFORNIA 90067-5061
TELEPHONE: (310) 407-4000

1  MICHAEL L. TUCHIN (State Bar No. 150375)
   LAURA L. BUCHANAN (State Bar No. 156261)
2  MARTIN R. BARASH (State Bar No. 162314)
   KLEE, TUCHIN, BOGDANOFF & STERN LLP
3  2121 Avenue of the Stars, 33rd Floor
   Los Angeles, California  90067-5061
4  Telephone:    (310) 407-4000
   Facsimile:    (310) 407-9090
5
   Proposed Reorganization Counsel for
6  Debtors and Debtors In Possession

7  Debtors' Mailing Address
   9939 Norwalk Blvd.
8  Santa Fe Springs, CA 90670

9              UNITED STATES BANKRUPTCY COURT

10             CENTRAL DISTRICT OF CALIFORNIA

11                 LOS ANGELES DIVISION

12  In re                          | Case No(s).:

13  APX HOLDINGS, LLC, et al.,      | Chapter 11

14                                  |
            Debtors.                |
15                                  | INTERIM FINANCING ORDER
                                    | AUTHORIZING BORROWING WITH
16                                  | PRIORITY OVER ADMINISTRATIVE
                                    | EXPENSES AND SECURED BY LIENS ON
17                                  | PROPERTY OF THE ESTATE
                                    | PURSUANT TO SECTION 364(C)
18                                  | OF THE BANKRUPTCY CODE

19

20

21

22

23

24

25

26

27

28

84176.5

KLEE, TUCHIN, BOGDANOFF & STERN LLP
2121 AVENUE OF THE STARS, 33RD FLOOR
LOS ANGELES, CALIFORNIA 90067-5061
TELEPHONE: (310) 407-4000

EXHIBIT __1__
PAGE __308__

1    **WHEREAS,** on March 15, 2006 (the "Petition Date"), APX Holdings, LLC and its

2    direct and indirect subsidiaries APX Logistics, Inc., APX Central, Inc., APX Express, Inc.,

3    APX One, LLC, CTC Direct, Inc., CTC Holdings I, Inc., Film Transit, Inc., Parcel Shippers

4    Express, Inc., Tex-Pack Express, LP, Tex-Pack Holdings, LLC, Tex-Pack, Inc., VA Parcel,

5    L.L.C., as debtors and debtors-in-possession (the "Debtors") filed voluntary petitions for

6    reorganization pursuant to Chapter 11 of Title 11, United States Code (the "Bankruptcy

7    Code"); and **WHEREAS,** the Debtors have continued in the management and operation of

8    its business pursuant to Bankruptcy Code §§ 1107 and 1108, and no trustee or examiner has

9    been appointed; and

10    **WHEREAS,** the Debtors have represented to the Court that prior to the Petition Date,

11    the Debtors were parties to a secured financing arrangement with Bank of America, N.A., as

12    assignee of Fleet Capital Corporation ("Lender") pursuant to a Credit and Security

13    Agreement dated as of October 29, 2004 (as amended, modified, supplemented and/or

14    restated to date and from time to time, the "Credit Agreement"), pursuant to which, among

15    other things, the Debtors granted to Lender liens, mortgages and security interests in all of

16    their assets (the "Pre-Petition Collateral") and Lender made revolving credit and term loans

17    to the Debtors; and

18    **WHEREAS,** the Debtors have moved the Court (the "Motion") for an order, pursuant

19    to Bankruptcy Code § 363 and § 364(c), to ratify, reaffirm and adopt, as modified and

20    supplemented by this Order, their pre-petition secured financing arrangement with, and

21    obtain debtor-in-possession financing from, Lender pursuant to the terms and conditions of

22    (a) the Credit Agreement (a copy of which is attached to the Motion)  and the other

23    agreements, documents, instruments and certificates executed and delivered to Lender in

24    connection with the Credit Agreement (collectively, the "Pre-Petition Agreements"), (b) the

25    budget annexed as Exhibit "A" hereto (the "Budget") and (c) this Order (collectively, the

26    Pre-Petition Agreements, the Budget and this Order shall be referred to hereinafter as the

27    "DIP Financing Documents"); and

28    **WHEREAS,** an interim hearing with respect to the Motion was held by the Court on

KLEE, TUCHIN, BOGDANOFF & STERN LLP
2121 AVENUE OF THE STARS, 33RD FLOOR
LOS ANGELES, CALIFORNIA 90067-5061
TELEPHONE: (310) 407-4000

84176.5

1

EXHIBIT
PAGE

March __, 2006;

## THE COURT HEREBY FINDS AND DETERMINES, ON AN INTERIM BASIS, THAT:

(a)    Lender is willing to advance monies to the Debtors only upon the conditions contained in this Order;

(b)    the Debtors are unable to obtain sufficient levels of unsecured credit allowable under Bankruptcy Code § 503(b)(1) as an administrative expense necessary to the preservation of their estates;

(c)    the Debtors are unable to obtain secured credit allowable only under Bankruptcy Code § 364(c)(1) and (c)(2), except under the terms and conditions provided in this Order;

(d)    it is in the best interest of the Debtors' estates that they be allowed to finance their operations under the terms and conditions set forth herein, as such financing is necessary to prevent a disruption of its business and to maximize the value of the Debtors' assets;

(e)    the Debtors would suffer immediate and irreparable harm absent approval of the Motion on an interim basis;

(f)    the Debtors admit and represent, without prejudice to the rights of any Official Committee of Unsecured Creditors (the "Committee") and third parties to challenge same to the extent set forth below, that as of the Petition Date, in accordance with the Pre-Petition Agreements, (1) the Debtors were indebted to Lender, without defense, counterclaim, recoupment or offset of any kind, in the aggregate amount of approximately $24,249,003.39 (as of 2:50 p.m. Eastern time) in respect of loans, advances and other financial accommodations made by Lender to the Debtors in accordance with the Pre-Petition Agreements (the "Pre-Petition Obligations"), and (2) the Pre-Petition Obligations were secured by valid, enforceable and properly perfected first priority liens on and security interests (the "Pre-Petition Liens") in the Pre-Petition Collateral;

KLEE, TUCHIN, BOGDANOFF & STERN LLP
2121 AVENUE OF THE STARS, 33RD FLOOR
LOS ANGELES, CALIFORNIA 90067-5061
TELEPHONE: (310) 407-4000

84176.5

EXHIBIT 1
PAGE 28

## AND THE COURT HEREBY FURTHER FINDS AND DETERMINES THAT

(g)   the credit and financial accommodations to be extended under the DIP Financing Documents are being extended by Lender in good faith and Lender is entitled to the protection of Bankruptcy Code § 364(e);

(h)   notice of relief sought by the Motion and the hearings with respect thereto, believed by the Debtors to be the best available notice under the circumstances, has been given pursuant to Bankruptcy Rule 4001(c) to the creditors holding the twenty largest unsecured claims against the Debtors' estates, the Office of the U.S. Trustee and Lender, and no further notice of, or hearing on, the interim relief sought in the Application is required;

(i)   good and sufficient cause exists for the issuance of this Order, to prevent immediate and irreparable harm to the Debtors' estates; and

(j)   the Court has core jurisdiction over the Debtors' bankruptcy cases, the Motion, and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157(b) and 1334, and venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409;

**NOW, THEREFORE, IT IS HEREBY ORDERED:**

1.   Subject to paragraph "24" hereof, the Debtors are hereby authorized and deemed to ratify and adopt the Pre-Petition Agreements, including the validity and enforceability of the Pre-Petition Obligations to Lender incurred thereunder and the liens and security interests granted to Lender thereunder, subject to the rights of the Committee and third parties to challenge same to the extent set forth below; provided that nothing contained herein shall be deemed to constitute an assumption of the Pre-Petition Agreements pursuant to Bankruptcy Code section 365(a) or otherwise result in the   Pre-Petition Obligations becoming post-petition claims.

2.   The Debtors are hereby authorized to borrow funds from and incur debt to Lender pursuant to the terms and conditions of the DIP Financing Documents, and use

KLEE, TUCHIN, BOGDANOFF & STERN LLP
2121 AVENUE OF THE STARS, 33RD FLOOR
LOS ANGELES, CALIFORNIA 90067-5061
TELEPHONE: (310) 407-4000

EXHIBIT  1
PAGE  29