LANDAU GOTTFRIED & BERGER LLP
RODGER M. LANDAU (STATE BAR NO. 151456)
MONICA RIEDER (STATE BAR NO. 263250)
1801 Century Park East, Suite 1460
Los Angeles, California 90067
Telephone: (310) 557-0050
Facsimile: (310) 557-0056

Counsel for Richard K. Diamond,
Chapter 7 Trustee

UNITED STATES BANKRUPTCY COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

LOS ANGELES DIVISION

| | |
|---|---|
| In re<br><br>APX HOLDINGS, L.L.C.<br>APX LOGISTICS, INC.<br>APX EXPRESS, INC.<br>APX CENTRAL, INC.<br>CTC DIRECT, INC.<br>PARCEL SHIPPERS EXPRESS, INC.<br>VA PARCEL, L.L.C.<br>TEX-PACK, INC.<br>TEX-PACK EXPRESS, L.P.,<br><br>        Debtors. | Bk. No. 06-10875-EC<br><br>Chapter 7<br><br>[Substantively consolidated with Case Nos.: 06-10877, 06-10879, 06-10880, 06-10881, 06-10882, 06-10883, 06-10884, and 06-10885]<br><br>**CHAPTER 7 TRUSTEE'S NOTICE OF MOTION AND MOTION FOR ORDER RECLASSIFYING PRIORITY CLAIM OF BLUE CROSS BLUE SHIELD OF MINNESOTA (CLAIM NUMBER 477, IN RE APX HOLDINGS, LLC); MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF MONICA RIEDER IN SUPPORT THEREOF**<br><br>    Date:  **March 3, 2010**<br>    Time: **1:30 p.m.**<br>    Place: **255 East Temple Street**<br>             **Courtroom 1639**<br>             **Los Angeles, California** |

**TO THE HONORABLE ELLEN CARROLL, UNITED STATES BANKRUPTCY JUDGE; THE CLAIMANT SPECIFIED HEREIN; THE OFFICE OF THE UNITED STATES TRUSTEE; AND OTHER PARTIES ENTITLED TO NOTICE:**

PLEASE TAKE NOTICE THAT Richard K. Diamond, Chapter 7 Trustee in the above-captioned bankruptcy cases (the "Trustee"), hereby moves for entry of an order reclassifying claim number 477 in *In re APX Holdings,* LLC, filed by Blue Cross Blue Shield of Minnesota (the "Disputed Claim"), from a priority claim to a general unsecured claim, on the basis that priority status is not warranted by the facts and law.

**If you are the holder of the Disputed Claim and disagree with the proposed reclassification, you must timely file opposition papers with the Court and serve those papers on the Trustee's counsel, as specified below, to preserve your rights. Absent the timely filing of opposition papers, the Court may reclassify or disallow the Disputed Claim without further notice.**

PLEASE TAKE FURTHER NOTICE THAT a hearing on the Motion has been scheduled for March 3, 2010, at 1:30 p.m., before the Honorable Ellen Carroll, United States Bankruptcy Judge, Courtroom 1639, 255 East Temple Street, Los Angeles, California 90012. Pursuant to Local Bankruptcy Rule 3007-1(b)(5), where a factual dispute is involved in an objection to a claim, the initial hearing on the objection may, at the Court's discretion, be deemed a status conference at which the Court may choose not to receive evidence. Where the objection involves only a matter of law, the matter may, at the Court's discretion, be argued and determined at the initial hearing.

PLEASE TAKE FURTHER NOTICE THAT any objection to the relief requested in the Motion and evidence in support thereof must (i) comply with the Local Rules for the Central District of California governing opposition papers, and (ii) no later than fourteen (14) days prior to the Hearing Date be filed with the Bankruptcy Court at the following address: United States Bankruptcy Court, Att'n: Clerk of the Court, 255 East Temple Street, Los Angeles, CA 90012 and served on Landau Gottfried & Berger LLP, Att'n: Monica Rieder, 1801 Century Park East, Suite 1460, Los Angeles, CA 90067.

1  PLEASE TAKE FURTHER NOTICE THAT the Trustee expressly reserves the right to
2  amend, modify, or supplement the objections asserted herein and to file additional objections to
3  the proof of claim or any other claims (filed or not) which may be asserted against the bankruptcy
4  estate. Should one or more of the grounds of the objection stated in this motion be dismissed, the
5  Trustee reserves the right to object on other stated grounds or on any other grounds that the
6  Trustee discovers during the pendency of these cases.
7  WHEREFORE, the Trustee respectfully requests that the Court enter an order (1)
8  reclassifying the Disputed Claim as a general unsecured claim, and (2) granting such other and
9  further relief as is just and proper.

DATED: February 1, 2010

_____
MONICA RIEDER, ESQ.
LANDAU GOTTFRIED & BERGER LLP
Counsel for Richard K. Diamond,
Chapter 7 Trustee

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## JURISDICTION

This Court has jurisdiction to consider this claims objection pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief requested herein are sections 502 and 507 of the Bankruptcy Code, Federal Rules of Bankruptcy Procedure 3007(a) and 9014, and Local Bankruptcy Rules 3007-1 and 9013-1.

## II.

## PROCEDURAL HISTORY

The above-captioned cases were commenced as Chapter 11 cases on March 16, 2006, by the filing of voluntary petitions for relief under Title 11 of the United States Code.

On August 31, 2006, this Court entered an Order Granting Motion to Approve Settlement Resolving Disposition of the Cases (the "Disposition Order"). Pursuant to the Disposition Order, the cases were converted to Chapter 7 on September 21, 2006. Richard K. Diamond was appointed as the trustee in these cases on September 22, 2006 (the "Trustee").

On January 25, 2008, the Trustee filed a Motion for Order Substantively Consolidating Debtors' Estates (the "Substantive Consolidation Motion"). On March 13, 2008, this Court entered an order granting the Substantive Consolidation Motion, substantively consolidating all of the above-captioned bankruptcy cases as of March 13, 2008.

## III.

## STATEMENT OF FACTS

On June 22, 2007, Blue Cross Blue Shield of Minnesota ("Blue Cross") filed a proof of claim, designated as claim number 477-1, in *In re APX Holdings, LLC*, asserting an unsecured priority claim in the amount of $582,366.38 (the "Original Blue Cross Claim"). A true and correct copy of the Original Blue Cross Claim is attached hereto as Exhibit "1." In the section

titled "Basis for Claim," Blue Cross checked the box for "Services performed." In the section titled "Unsecured Priority Claim," Blue Cross checked the box for "Contributions to an employee benefit plan." Blue Cross did not file any documentation in support of its claim.

On December 18, 2009, Blue Cross filed an amended proof of claim, designated as 477-2, asserting an unsecured priority claim in the amount of $568,503 (the "Amended Blue Cross Claim"). A true and correct copy of the Amended Blue Cross Claim is attached hereto as Exhibit "2." In the section titled "Basis for Claim," Blue Cross wrote "services performed." Under the heading "Specify the priority of the claim," Blue Cross checked the box for "Contributions to an employee benefit plan." In support of the claim, Blue Cross filed a chart summarizing the billing amounts and dates for various policy groups as well as approximately 140 pages of insurance bills.

Blue Cross did not file an insurance policy or contract in support of either the Original Blue Cross Claim or the Amended Blue Cross Claim. However, in connection with a preference action brought by the Trustee against Blue Cross (adversary number 08-01115), Blue Cross provided a document titled "Your Health Care Group Contract" (the "Health Care Contract"). A true and correct copy of the Health Care Contract is attached hereto as Exhibit "3" for the Court's reference and convenience. Counsel for Blue Cross has confirmed that the Health Care Contract is the contract under which the insurance premiums were billed. A true and correct copy of a January 26, 2010 e-mail from Blue Cross' counsel acknowledging that the Health Care Contract is the relevant contract is attached hereto as Exhibit "4." The Health Care Contract establishes that Blue Cross' claim is based on the provision of health insurance coverage to employees of the Debtors.

### IV.

### APPLICABLE LAW

A claim is deemed allowed unless the trustee or other party in interest objects. 11 U.S.C. § 502(a). Section 704(a)(5) requires the trustee to "examine proofs of claims and object to the allowance of any claim that is improper." To the extent that there is money remaining in the

estate, allowed claims are ultimately paid in the order set forth in 11 U.S.C. § 727, beginning with priority claims. To obtain such priority repayment status, a claim must fall within one of the categories outlined in 11 U.S.C. § 507(a).

## V.

## ARGUMENT

The Trustee objects to the Amended Blue Cross Claim because it does not qualify for priority status under 11 U.S.C. § 507(a)(5). Section 507(a)(5) grants priority to "allowed unsecured claims for contributions to an employee benefit plan," within certain limitations. The Trustee does not dispute that the Health Care Contract was an employee benefit plan. However, it does not appear that premiums billed to an employer constitute "contributions" for purposes of § 507(a)(5). While the Ninth Circuit has recently recognized the issue as unresolved, *see Consol. Freightways Corp. v. Aetna, Inc. (In re Consol. Freightways Corp.)*, 564 F.3d 1161, 1167 (9th Cir. 2009) ("[W]e need not enter the debate over whether a third party plan servicer's claim can be entitled to § 507(a)(5) priority."), the Trustee believes the better argument is that such claims are not entitled to priority.[1]

### A. Section 507(a)(5)'s Language Only Applies to Claims Held by Employees.

Multiple aspects of the language of § 507(a)(5) indicate that the paragraph is intended to apply only to claims by employees. First, § 507(a)(5) grants priority only to claims for contributions to an employee benefit plan "arising from *services rendered* within 180 days before the date of the filing of the petition or the date of the cessation of the debtor's business" (emphasis added). It is employees, rather than insurers, who render the services that give rise to an employer's obligation to make contributions to an employee benefit plan. *See State Ins. Fund v. Mather (In re Southern Star Foods, Inc.)*, 210 B.R. 838, 841 (B.A.P. 10th Cir. 1997), aff'd by *State Ins. Fund v. Southern Star Foods, Inc. (In re Southern Star Foods, Inc.)*, 144 F.2d 712 (10th

---

[1] In 1993, the Ninth Circuit held that an insurer's claim for unpaid workers' compensation insurance premiums was entitled to priority because the premiums were "contributions to an employee benefit plan." *Employers Ins. of Wausau v. Plaid Pantries, Inc.*, 10 F.3d 605 (9th Cir. 1993). That case was overruled by *Howard Delivery Service, Inc. v. Zurich American Insurance Co.*, 547 U.S. 651 (2006), in which the Supreme Court held that a claim for workers' compensation insurance premiums was not entitled to priority because workers' compensation insurance is not "an employee benefit plan." In *Howard Delivery* the Court suggested, but did not decide, that claims for unpaid premiums on plans that *are* employee benefits plans are entitled to priority under § 507(a)(5).

LANDAU GOTTFRIED
& BERGER LLP

6

Cir. 1998) ("Insurance premiums do not arise from 'services rendered' by employees as required under § 507(a)(4). . . . The claim for unpaid premiums does not arise from 'services rendered' but from [the employer's] failure to pay its insurer.").

Second, the amount that can be claimed under § 507(a)(5) is reduced by the amount of any priority wage claims paid under § 507(a)(4). 11 U.S.C. § 507(a)(5) (granting priority to claims for contributions to an employee benefit plan, "but only . . . for each such plan, to the extent of— (i) the number of employees covered by such plan multiplied by $10,950; less (ii) the aggregate amount paid to such employees under paragraph (4) of this subsection, plus the aggregate amount paid by the estate on behalf of such employees to any other employee benefit plan"). This reduction indicates that the pot of money available under § 507(a)(5) is intended to go to the exact same set of people who could assert priority wage claims under § 507(a)(4)—namely, employees. *See In re AER-Aerotron, Inc.*, 182 B.R. 725, 727 (Bankr. E.D.N.C. 1995) ("[I]n examining the plain meaning of the Bankruptcy Code the court also finds it significant that the statutory cap on the employee benefits priority described in § 507(a)(4)(B) references the wage priority in § 507(a)(3) as a part of the cap's calculation. If insurance companies were meant to be eligible to claim the § 507(a)(4) priority, the priority would not be limited by the amount that employees may collect under the wage priority.").

Finally, § 507(a)(5) parallels § 507(a)(4), particularly in limiting claims to amounts "earned" or "arising from services rendered" within the "180 days before the date of the filing of the petition or the date of the cessation of the debtor's business, whichever occurs first." This parallelism indicates that the two sections apply to claims arising from the same basic situation; § 507(a)(4) addresses the harm suffered by employees when an insolvent employer ceases paying wages, and § 507(a)(5) addresses the harm suffered by employees when an insolvent employer ceases to make contributions to the employees' benefit plan. *See Edward W. Minte Company, Inc. v. Franey & Parr (In re Edward W. Minte Company, Inc.)*, 286 B.R. 1, 9 ("Sections 507(a)(3)(A) and 507(a)(4) bear striking similarity in structure and phrasing, and are plainly meant to work together in addressing claims arising from services rendered by employees, not services rendered by third parties.").

B. <u>Granting Insurers Priority Status under § 507(a)(5) Would Not Serve the Statutory Purpose of Benefiting Employees.</u>

The legislative history establishes that § 507(a)(5) was enacted for the purpose of benefiting employees. In 1959, the Supreme Court held that the existing wage priority did not extend to fringe benefits such as pension fund or health insurance contributions. *See U.S. v. Embassy Restaurant*, 359 U.S. 29. The employee benefit plan priority (then contained in § 507(a)(4)) was explicitly enacted in response to the *Embassy Restaurant* decision. H.R. Rep. No. 95-595, at 187 (1978), reprinted in 1978 U.S.C.C.A.N. 5963, 6313 (footnotes omitted). Congress felt that the denial of priority status to fringe benefits, which had become an increasingly important part of employee compensation and for which wage dollars were often traded, did "a severe disservice to those working for a failing enterprise." *Id.*, reprinted in 1978 U.S.C.C.A.N. 5963, 6148 (footnotes omitted). Accordingly, when Congress created the priority for "contributions to an employee benefit plan," it was with the intention of filling a gap in the protection afforded to employees by the wage priority, not to give priority treatment to certain insurance providers over other insurance providers.

Granting priority payment status to insurers' claims in bankruptcy does not serve the Congressional intent of benefiting employees. The employees have already received the benefit of the insurance coverage and will receive no additional benefit from the trustee's payment of premiums at the end of the bankruptcy case. One bankruptcy court offered a useful hypothetical to illustrate this point:

> During negotiations for wages and benefits, an employer promises that it will build and equip a breakroom for its employees. The employer hires a general contractor to carry out this promise and the breakroom is duly completed. The employer then files a bankruptcy petition. The employees have already received the promised benefit of their new breakroom, and it will not give these employees any 'benefit' at all to prefer the general contractor's claim for the construction costs, to the detriment of all the employer's other creditors, by allowing the contractor to claim the § 507(a)(4) priority.

*AER-Aerotron*, 182 B.R. at 727.

Some courts have argued that granting insurers a priority claim will benefit employees indirectly by encouraging insurers to continue providing coverage to financially troubled

employers. *See, e.g., In re Saco Local Development Corp.*, 711 F.2d 441 (1st Cir. 1983) ("To allow the insurer to obtain the premiums through the priority would seem the surest way to provide the employees with the policy benefits to which they are entitled."). However, in *Howard Delivery Service*, the Supreme Court treated this argument with skepticism, doubting that "the projected incentive would outweigh competing financial pressure to pull the plug swiftly on an insolvent policyholder, and thereby contain potential losses." 547 U.S. at 666. The Court also noted that an assurance of priority status might not have much effect on the insurers' decision-making process, since there is no guarantee in a given bankruptcy case that even priority claims will be paid. Ultimately, the Court decided to base its decision on textual interpretation of the priority statute, "[r]ather than speculating on how . . . insurers might react were they to be granted an (a)(5) priority." *Id.* at 667.

### C. Bankruptcy Policy Dictates that a Claim Should Only Receive Priority Treatment If the Claimant Has Clearly Established Entitlement to Priority Status.

Finally, where there is doubt regarding the extent of a priority afforded by § 507(a), the doubt should be resolved in favor of a limiting interpretation. It is well established that the priority sections are to be construed narrowly. *See Consol. Freightways Corp. v. Aetna, Inc. (In re Consol. Freightways Corp.)*, 564 F.3d 1161, 1167 n.14 (9th Cir. 2009) ("[T]he scope of priorities should be strictly construed because 'preferential treatment of a class of creditors is in order only when clearly authorized by Congress.'"); *Cal. Self-Insurers' Sec. Fund v. Lorber Indus. (In re Lorber Indus.)*, 373 B.R. 663, 670 (B.A.P. 9th Cir. 2007) ("§ 507 priority is to be strictly construed."); *In re Pacific Arts Publ.*, 198 B.R. 319, 322 (Bankr. C.D. Cal. 1996) ("The general policy in the Ninth Circuit, as well as other circuits, is that priorities in bankruptcy should be narrowly construed and sparingly granted."). Likewise, the burden of proof is on the party asserting priority status. *See, e.g., In re Terra Distrib. Inc.*, 148 B.R. 598, 600 (Bankr. D. Id. 1992) ("The burden to demonstrate the elements required for priority status lies upon the claimant."). These rules further the central bankruptcy policy of equal distribution among creditors. *See Begier v. Internal Revenue Serv.*, 496 U.S. 53, 58 (1990) ("Equality of distribution among creditors is a central policy of the Bankruptcy Code."); *State Ins. Fund v. Mather*, 210

LANDAU GOTTFRIED
& BERGER LLP

9

B.R. at 841 ("Priority status is not favored because the overriding policy in bankruptcy is equal treatment of creditors."). They also ensure an adequate fund of money for distribution to those genuinely entitled to priority. *See Cramer v. Mammoth Mart, Inc. (In re Mammoth Mart, Inc.)*, 536 F.2d 950, 953 (1st Cir. 1976) ("To give priority to a claimant not clearly entitled thereto . . . dilutes the value of the priority for those creditors Congress intended to prefer."). Accordingly, a claim should only receive priority status if the claimant can demonstrate clear entitlement to that priority.

## VI.

## CONCLUSION

The Amended Blue Cross Claim, which asserts liability for providing insurance under an "employee benefit plan," does not qualify for priority status under § 507(a)(5). Accordingly, the Trustee respectfully requests that the Court reclassify the $568,503 Amended Blue Cross Claim as a general unsecured claim and grant such other and further relief as is just and proper.

DATED: February 1, 2010

*[signature: Monica Rieder]*

MONICA RIEDER, ESQ.
LANDAU GOTTFRIED & BERGER LLP
Counsel for Richard K. Diamond,
Chapter 7 Trustee

# DECLARATION OF MONICA RIEDER

I, Monica Rieder, declare as follows:

1. I am over 18 years old, and the facts stated herein are based on my personal knowledge.

2. I am an attorney at the firm of Landau Gottfried & Berger LLP, which represents the Chapter 7 trustee in the above-captioned cases.

3. The Chapter 7 trustee has filed a Motion for Order Reclassifying Priority Claim of Blue Cross Blue Shield of Minnesota (Claim Number 477, In Re APX Holdings, LLC) (the "Motion").

4. Attached as Exhibit "1" to the Motion is a true and complete copy of proof of claim number 477-1 in *In re APX Holdings, LLC*.

5. Attached as Exhibit "2" to the Motion is a true and complete copy of proof of claim number 477-2 in *In re APX Holdings, LLC*.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed this 1st day of February, 2010, at Los Angeles, California.

_____
MONICA RIEDER