# EXHIBIT 3

# YOUR HEALTH CARE

# GROUP CONTRACT



BlueCross BlueShield
BluePlus
of Minnesota
Independent licensees of the Blue Cross and Blue Shield Association

CN073
APX Logistics, Inc.
7500 Setzler Parkway North
Brooklyn Park, Minnesota 55445

5782

BCBSM00697

Exhibit 3
159

# Blue Cross and Blue Shield of Minnesota

# Group Health Care Coverage Contract

CN073　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　5782
APX Logistics, Inc.
7500 Setzler Parkway North
Brooklyn Park, Minnesota 55445
X7304-R13

BCBSM00698

Exhibit 3
160

# Blue Cross and Blue Shield of Minnesota

# Group Health Care Coverage Contract

## *Definitions*

Under this contract, the following definitions apply:

| | |
|---|---|
| **We, Us, Our, BCBSM, Blue Cross** | Blue Cross and Blue Shield of Minnesota |
| **Contractholder** | The contract is issued to the contractholder shown in Article I.1. |
| **Co-Employers** | A worksite employer and a professional employer organization that have a written agreement making them co-employers. |
| **Employees** | Employees of the contractholder are defined as group members in the employees' certificate(s). Eligible employees are defined in Article I.5. |
| **Dependents** | Dependents of the employees' are defined in the employees' certificate(s). |
| **Professional Employer Organization (PEO)** | An organization that, as co-employer, provides human resource and other services to a worksite co-employer, which services may include payment of the worksite employer's (the contractholder) health care premiums. |
| **Worksite Employer** | The employer who owns, operates, or manages the business that contracts with a PEO, and the contractholder whose employees are covered under this contract. |

# ARTICLE I - ELIGIBILITY

1. **Contractholder:** APX Logistics, Inc.

   **Address:** 7500 Setzler Parkway North
   Brooklyn Park, Minnesota 55445

2. Group Contract Number: CN073

3. Names and addresses of subsidiary and affiliated companies included for coverage:

   There are no subsidiary or affiliated companies included for coverage.

4. The nature of business is Distributing Mail Services/Parcels.

5. Employees are classified according to the number of hours worked per week, job classification, union membership status, or other such factors. An employee's classification determines, in part, the individual's eligibility to participate in the health plan. All co-employees of the PEO are counted for purposes of determining group size.

   Classification of eligible employees:

   "All fulltime"

6. The employees must meet these contractholder requirements to be eligible:

   All sub groups have 32.00 required hours.

7. Change of Classification:

   If the employee's coverage is subject to change because they change their classification under this contract, the change is effective on the first day of the next contract month, following written notice to us of the change. The change will be applied only to service provided thereafter.

   The contractholder must notify us in writing within 31 days of a change in classification involving an increase of coverage.

8. All present employees, as described in Article I.5. above, will be eligible as follows:

   Class(es): 0W0, 0W1, 0W2, 0W3, 0W4, 0W5, 0W6, 0W7

   on the first of the month following their waiting period. If the waiting period ends on the first of the month, coverage will be effective that day.

9. Employees will be eligible upon the following date provided we receive an application in our home office within 30 days from that date:

   Class(es): 0W0, 0W1, 0W2, 0W3, 0W4, 0W5, 0W6, 0W7

   The first of the month following their waiting period. If the waiting period ends on the first of the month, coverage will be effective that day.

   | Class | Waiting Period |
   |-------|----------------|
   | 0W0   | None           |
   | 0W1   | 003 Months     |
   | 0W2   | None           |
   | 0W3   | 003 Months     |
   | 0W4   | None           |
   | 0W5   | 003 Months     |

BCBSM00700

X7304-R13

Page 2

Exhibit 3
162

| | |
|---|---|
| 0W6 | None |
| 0W7 | 003 Months |

All present and new employees should refer to the certificate to determine the actual date their coverage begins.

10. The effective date of this contract is 12:00 a.m. Central Time January 1, 2006. Each contract month thereafter will begin on the first day of each calendar month and end on the first day of the next succeeding calendar month. This contract replaces the current contract which was effective on February 1, 2005.

    Unless otherwise agreed, the renewal date will be on the first day of the same month in which the contract became effective. For example, if the contract became effective on June 15, the contract renewal date will be June 1 annually.

11. Under Minnesota law, coverage for any individual who terminates coverage must continue until the end of the month in which the individual terminates coverage.

## ARTICLE II - CONTRACT CHARGE CALCULATION AND PAYMENT

1. The first contract charge is payable on the effective date of this contract. Monthly charges are payable on the first day of each following month during the time this contract is in force. All charges are payable by the contractholder or, if applicable, a PEO employer, to us.

2. If the employees' coverage under this contract starts during the first 15 days of a contract month, the monthly charges for their coverage will start on the first of that month. If the employees' coverage starts on or after the 16th day of a contract month, the monthly charge will start on the first day of the following month.

    The monthly charge will be determined from our record by the number of employees in each coverage class at the time of the calculation of the charges which are shown below. Retroactive adjustments will be made for additions and terminations of employees and changes in the coverage class not already shown in our records at the time of the calculation. We will not make a retroactive credit for more than two (2) months prior to the date we receive notice of an employee's termination. This retroactive credit does not apply when the contractholder terminates each employee, thereby cancelling this group contract.

3. The contractholder will contribute the following toward the monthly charge under this contract:

    Partial Employee-Partial/No Dependents

4. We have the right to increase or reduce charges: on a monthly due date for changes in the status of the group, including changes to waiting period, eligibility, census, or health status; on a monthly due date for fraud or misrepresentation by the contractholder, employees, or dependents; on a monthly due date to correct administrative errors; on an annual renewal date for changes in the index rate; in accordance with state law or on any date the provisions of the contract are changed. Written notice will be mailed to the contractholder's last address on our records at least 31 days prior to the date the adjustment becomes effective.

    The contractholder agrees to furnish us with all information and proofs which we may require with regard to any matters pertaining to this contract. This includes all documents furnished to employees in connection with the coverage, along with the contractholder's payroll and other records, including records maintained by a PEO co-employer, that may have a bearing on the coverage under this contract. These documents will be open for review by us at reasonable times.

    At least 80% of all eligible employees must make application for themselves. At least 50% of those eligible employees who enroll who have eligible dependents must make written application for their dependents. This is required before the contract will become effective, regardless of the effective date shown in Article I.10. of this contract.

5. The monthly charge for each of the employees are:

    Class(es): 0W0,0W1,0W4,0W5

    RATE CATEGORY

BCBSM00701

X7304-R13     Page 3

Exhibit 3
163

| | |
|---|---|
| Employees only | $ 396.50 |
| Employees and child | $ 871.50 |
| Employees and spouse | $ 871.50 |
| Employees and children | $ 1,108.50 |
| Employees and dependent | $ 1,108.50 |

Class(es): 0W2,0W3,0W6,0W7

RATE CATEGORY

| | |
|---|---|
| Employees only | $ 329.50 |
| Employees and child | $ 726.00 |
| Employees and spouse | $ 726.00 |
| Employees and children | $ 924.50 |
| Employees and dependent | $ 924.50 |

# ARTICLE III - COBRA NOTICE

Employer shall deliver an initial COBRA notice and notice of qualifying event to qualified beneficiaries in accordance with federal COBRA regulations using either a form provided by Blue Cross or another fully compliant form.

Employer shall establish reasonable COBRA notice procedures in accordance with federal regulations. Employer agrees to indemnify Blue Cross for any losses directly related to employer's failure to establish reasonable COBRA notice procedures.

# ARTICLE IV - CANCELLATION

*Any cancellation will be without prejudice to any claim originating before the effective date of cancellation.*

## Blue Cross and Blue Shield of Minnesota Initiated Cancellation

This contract is guaranteed renewable and cannot be cancelled as a result of the claim experience or health status of your group. We can, however, cancel or fail to renew this contract for the following reasons:

1. for nonpayment of the required premium by: 1) the contractholder; 2) a PEO if the contractholder has an agreement with a PEO that requires the PEO to pay us; or 3) any other third party payor;

2. for fraud or misrepresentation by the contractholder with respect to eligibility for coverage or any other material fact;

3. if participation in this plan during the preceding plan/calendar year declines to less than 80% of eligible employees who have not waived coverage due to other group coverage;

4. when the contractholder has failed to comply with a material plan provision relating to employer contribution or group participation rules.

5. if we cease to do business in the market.

6. the contractholder moves its headquarters and/or a substantial portion of its business operations outside of Minnesota.

We may cancel or fail to renew the coverage of an employee or an employee's dependent for fraud or misrepresentation with respect to any health related factor relating to any other material fact.

Employees of the contractholder will be notified by us in writing 30 days prior to the effective date of the cancellation to inform the employees of potential coverage termination if termination occurs for any reason other than replacement of coverage.

X7304-R13

Page 4

BCBSM00702

Exhibit 3
164

If we cancel this contract for any of the above reasons, the contract will be terminated at the end of any contract month by giving written notice to the contractholder. Notice will state the cancellation effective date and will be mailed to the last address we have on record not less than 31 days prior to the cancellation date.

### Contractholder Initiated Cancellation

The contractholder may cancel this contract at the end of any contract month by written notice received by us prior to the effective date of cancellation unless we have initiated contract cancellation for any of the reasons stated above. The contractholder may not retroactively cancel each employee's coverage as permitted under Article II, section 2, to avoid this advance notice requirement.

### Other Circumstances

If the contractholder erroneously enrolled the employee and/or their dependent(s), and subsequently requests coverage termination retroactively to the employee's and/or their dependent(s) effective date of coverage, coverage will remain in force to a current paid-to-date, unless the contractholder obtains and forwards to us the employee's written consent authorizing retroactive termination of coverage. If written consent is not obtained and forwarded to us with the cancellation request, the contractholder must pay the required coverage costs for the employee's and/or their dependent's coverage in full to a current paid-to-date.

If Blue Cross and Blue Shield of Minnesota cancels this group contract, then we will provide eligible Medicare beneficiaries written notice of their right to guaranteed issue of Medicare Supplement insurance as required by federal and state law. If the group contractholder terminates group coverage or ceases to provide health benefits that supplement Medicare, then the group contractholder shall provide eligible Medicare beneficiaries written notice of their right to guaranteed issue of Medicare Supplement insurance as required by federal and state law.

## ARTICLE V - GRACE PERIOD

Unless we or the contractholder have given written notice of cancellation, as described in Article III, a grace period will be granted until the 15th day of the month after which payment is due. This contract will continue in force during the grace period. If the charges are not paid at the end of the grace period, this contract will be terminated on the last day of the month 30 days after we provide notice of cancellation to all group members. The contractholder will be liable to us for payment of charges during the time the contract is in force.

## ARTICLE VI - BENEFIT CHART

Refer to the benefit chart and Benefit Summary in the employees' certificate(s).

## ARTICLE VII - CONTRACT FORMS

The certificate issued to the employees' is part of this contract.

Benefit variations are identified by the class numbers shown in Article I.5.

The certificates bear form number(s):

| Class | Form number |
|-------|-------------|
| 0W0 | X8776-R13 |
| 0W1 | X8776-R13 |
| 0W2 | X8776-R13 |
| 0W3 | X8776-R13 |
| 0W4 | X8776-R13 |
| 0W5 | X8776-R13 |
| 0W6 | X8776-R13 |
| 0W7 | X8776-R13 |

This contract and certificates are issued to the contractholder as the Plan Administrator for the coverage plan.

## ARTICLE VIII - OUT OF STATE MEMBERS

The following applies only to employees residing outside of the state of Minnesota:

> In the event of a conflict between language contained in the contract and applicable state insurance statutes, this contract is automatically amended to conform to the state statute, to the extent that the legislation is determined to be applicable to employees residing outside of the state of Minnesota.

## ARTICLE IX - PROFESSIONAL EMPLOYER ORGANIZATION

If the contractholder contracts with a Professional Employer Organization (PEO), the contractholder must immediately notify Blue Cross and Blue Shield of Minnesota and provide Blue Cross and Blue Shield of Minnesota a copy of its agreement with the PEO. The contractholder must promptly notify Blue Cross and Blue Shield of Minnesota of changes in its relationship with the PEO that affect this contract.

## ARTICLE X - CONTRACT INTERPRETATION

We have discretionary authority to determine employees eligibility for benefits and to construe the provisions of the group certificate(s) and this contract.

## ARTICLE XI - PROVIDER PAYMENT ARRANGEMENTS

We have entered into separate payment arrangements with health care providers to provide service to employees, including their dependents, under this contract. Under these special payment arrangements, we do not pay an amount which corresponds to the remainder of the billed charge or usual and customary charge after the employee or dependent pays any applicable deductible, coinsurance, or copayment amounts as calculated in the certificate. These payment amounts generally result in the provider being paid less by us overall, on an annual basis, than its billed charges for services to our customers.

The contractholder acknowledges that its fees and/or coverage costs were negotiated taking these arrangements into account and that we may receive additional consideration in the form of savings realized under our provider payment arrangements or manufacturer/pharmaceutical arrangements. A specified savings amount has been allocated to the contractholder. Neither the contractholder nor any employee or dependent is entitled to any portion of discounts, unless agreed to by the contractholder and us, and specified in the contract.

## ARTICLE XII - BLUECARD® PROGRAM

Like all Blue Cross and Blue Shield Licensees, BCBSM participates in a program called "BlueCard." Whenever employees access health care services outside the geographic area BCBSM serves, the claim for those services may be processed through BlueCard and presented to BCBSM for payment in conformity with network access rules of the BlueCard Policies then in effect ("Policies"). Under BlueCard, when employees receive covered health care services within the geographic area served by an on-site Blue Cross and/or Blue Shield Licensee ("Host Blue"), BCBSM will remain responsible to the contractholder for fulfilling BCBSM's contract obligations. The "Host Blue" will only be responsible, in accordance with the applicable BlueCard Policies, if any, for providing such services as contracting with its participating providers, handling all interaction with its participating providers, and providing some managed care services. The financial terms of BlueCard are described generally below.

The calculation of employees liability on claims for covered health care services incurred outside the geographic area BCBSM serves and processed through BlueCard will be based on the lower of the provider's billed charges or the negotiated price BCBSM pays the "Host Blue."

The methods by a "Host Blue" to determine a negotiated price will vary among "Host Blues" based on the terms of each "Host Blue's" provider contracts. The negotiated price paid to a "Host Blue" by BCBSM on a claim for health care services processed through BlueCard may represent:

1. The actual price paid on the claim by the "Host Blue" to the health care provider ("Actual Price"), or

2. An estimated price, determined by the "Host Blue" in accordance with BlueCard Policies, based on the Actual Price increased or reduced to reflect aggregate payments expected to result from settlements, withholds, and other contingent payment arrangements and non-claims transactions with all of the "Host Blue's" health care providers or one (1) or more particular providers ("Estimated Price"), or

3. An average price, determined by the "Host Blue" in accordance with BlueCard Policies, based on billed charges discount representing the "Host Blue's" average savings expected after settlements, withholds, any other contingent payment arrangements and non-claims transactions for all of its providers or for a specified group of providers ("Average Price"). An Average Price may result in greater variation to the employees and the contractholder from the Actual Price than would be an Estimated Price.

# ARTICLE XIII - BLUE PRINT FOR HEALTH®

Blue Cross will provide a contractholder-based health improvement program known as BluePrint for Health® ("BluePrint for Health"). BluePrint for Health is a comprehensive, menu driven, primary, secondary and tertiary prevention oriented behavior change program. Blue Cross will work collaboratively with contractholder, its consultant and/or other authorized third parties to implement the BluePrint for Health program for contractholder's eligible population.

Blue Cross provides some of the BluePrint for Health services directly to the contractholder and has entered into agreements with various vendors to provide certain other BluePrint for Health services. In addition to the BluePrint for Health services targeted specifically at individuals, Blue Cross will provide an Employer Health Consultant as the main point of contact for health improvement programs and services, as deemed appropriate, to ensure that all aspects of the program are effectively delivered.

Throughout the term of this contract, Blue Cross will provide consultation, review and other ongoing support services to contractholder, its consultant and/or other authorized parties, when necessary or requested by contractholder to fulfill the purpose of BluePrint for Health. Blue Cross will provide marketing materials to contractholder to distribute and promote BluePrint for Health services as requested or needed. Blue Cross will provide additional consultative services to contractholder, its consultant and/or other authorized third parties, as requested, for development of other promotional/communication materials for an additional fee.

Contractholder recognizes that in the course of providing BluePrint for Health services, Blue Cross and/or its designated vendors will generate and obtain protected health information concerning employees of contractholder and their dependents. Contractholder acknowledges that Blue Cross and/or its designated vendors will need access to protected health information in order to perform BluePrint for Health services and contractholder consents to such access.

Blue Cross will provide to contractholder the following BluePrint for Health services:

- BluePrint for Health® Online
- BluePrint for Health® stop-smoking program
- Consultation on strengthening worksite tobacco use policies
- Health education materials
- Case management
- BluePrint for Health® care support - support for members with chronic conditions
- Healthy Start™ - prenatal support
- FirstHelp™ - nurse advice line
- FluStop℠ - flushot clinics and promotion
- BluePrint for Health® employee assistance program - phone-based counseling
- BluePrint for Health® fitness discounts
- Employer Assistance Program (EAP) - assessment and referral for personal problems (core program)

Blue Cross reserves the right to modify BluePrint for Health programs. Blue Cross will provide notice of material modifications to the BluePrint for Health programs not less than 30 days prior to implementation of such change.

## ARTICLE XIV - ACCEPTANCE OF THE CONTRACT

Payment to BCBSM by employer (either by direct check or ACH) will signify employer's acceptance of all terms, conditions, and obligations of this contract. Acceptance will be effective on the effective date of this contract.

Note:

This contract and certificate make up the entire contract of coverage. The group contractholder on behalf of itself and its employees hereby expressly acknowledges its understanding that this agreement constitutes a contract solely between the group contractholder, in its capacities as Plan Sponsor, Plan Administrator, and as agent on behalf of the Plan and BCBSM, that BCBSM is an independent corporation operating under a license from the Blue Cross and Blue Shield Association, an association of independent Blue Cross and Blue Shield Plans, (the "Association") permitting BCBSM to use the Blue Cross and/or Blue Shield Service Mark in the state of Minnesota, and that BCBSM is not contracting as the agent of the Association. The group contractholder further acknowledges and agrees that it has not entered into this agreement based upon representations by any person other than BCBSM and that no person, entity, or organization other than BCBSM shall be held accountable or liable to the group contractholder for any of BCBSM's obligations to the group contractholder created under this agreement. This paragraph shall not create any additional obligations whatsoever on the part of BCBSM other than those obligations created under other provisions of this agreement. The group contractholder, BCBSM and Plan are hereinafter collectively referred to as the "Parties."

IN WITNESS WHEREOF, our President and Assistant Secretary hereby sign your contract.

*[signature]*

Mark Banks
President and CEO

*[signature]*

Marsha A. Shotley
Assistant Secretary

# EXHIBIT 4

# Monica Rieder

| | |
|---|---|
| **From:** | William P. Wassweiler [wwassweiler@lindquist.com] |
| **Sent:** | Tuesday, January 26, 2010 12:41 PM |
| **To:** | Monica Rieder |
| **Subject:** | RE: Blue Cross Blue Shield of Minnesota/In re APX Holdings, LLC |
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Red |

Thanks for the email. The Group Health Care Coverage Contract is indeed the contract that addresses the premium payments.

-----Original Message-----
From: Monica Rieder [mailto:mrieder@LGBFirm.com]
Sent: Monday, January 04, 2010 10:09 PM
To: William P. Wassweiler
Cc: Rodger M. Landau
Subject: RE: Blue Cross Blue Shield of Minnesota/In re APX Holdings, LLC

Dear Mr. Wassweiler,

Thank you for providing me with a copy of the amended Blue Cross Blue Shield of Minnesota proof of claim you sent to the bankruptcy court for filing on December 17, 2009. While the amended proof of claim is accompanied by the bills for the insurance premiums on which the claim is based, I do not see that you submitted a copy of the relevant insurance contract or policy.

However, the attached "Group Health Care Coverage Contract" was submitted as an exhibit to Blue Cross' motion for summary judgment in adversary proceeding 08-01115. Could you please let me know whether this contract is the contract under which those insurance premiums were billed and whether there are any other contracts or policies relevant to Blue Cross' claim?

Also, the calculations for your original proof of claim included amounts for January 2006, February 2006, and part of March 2006 (through March 16, the date the petition was filed). However, the bills provided with the amended proof of claim appear to cover all of January, February, and March. Could you please let me know whether the $115,301.12 wire received on March 31, 2006 (listed on Exhibit A to the amended proof of claim), covered the post-petition premiums for March? That is, could you please confirm that the claim amount of $568,503 is entirely for pre-petition health insurance premiums (for January, February, and March 1-16)?

Monica Rieder
Landau Gottfried & Berger LLP
1801 Century Park East, Suite 1460
Los Angeles, CA 90067
Telephone:   (310) 557-0050 x125
Facsimile:   (310) 557-0056
Email: MRieder@LGBFirm.com
-----Original Message-----
From: William P. Wassweiler [mailto:wwassweiler@lindquist.com]
Sent: Saturday, December 12, 2009 11:42 AM
To: Monica Rieder
Cc: Rodger M. Landau
Subject: RE: Blue Cross Blue Shield of Minnesota/In re APX Holdings, LLC

We intend to file our second amended proof of claim next week.


Lindquist & Vennum PLLP
4200 IDS Center, 80 South Eighth Street
Minneapolis, MN 55402

1

Exhibit 4
169

Office: 612-371-3289 www.lindquist.com

```
-----Original Message-----
From: Monica Rieder [mailto:mrieder@lblawllp.com]
Sent: Friday, December 11, 2009 6:06 PM
To: William P. Wassweiler
Cc: Rodger M. Landau
Subject: FW: Blue Cross Blue Shield of Minnesota/In re APX Holdings, LLC
```

Dear Mr. Wassweiler,
Per the below e-mails, please advise me of your progress in preparing a properly supported amended proof of claim for Blue Cross Blue Shield of Minnesota.

Thank you,
Monica Rieder

Monica Rieder
Landau & Berger LLP
1801 Century Park East, Suite 1460
Los Angeles, CA 90067
Telephone:  (310) 557-0050 x125
Facsimile:  (310) 557-0056

```
-----Original Message-----
From: Rodger M. Landau
Sent: Friday, November 13, 2009 2:14 PM
To: 'wwassweiler@lindquist.com'; Monica Rieder
Subject: Re: Blue Cross Blue Shield of Minnesota/In re APX Holdings, LLC
```

Please attach the supporting documents to a revised proof of claim as required under the applicable rules.

Rodger

```
----- Original Message -----
From: William P. Wassweiler <wwassweiler@lindquist.com>
To: Monica Rieder
Cc: Rodger M. Landau
Sent: Fri Nov 13 13:11:11 2009
Subject: RE: Blue Cross Blue Shield of Minnesota/In re APX Holdings, LLC
```

Thank you for the email. I believe the information that supports BCBSM, Inc.'s claim was already produced to counsel for the trustee, however, I will be happy to produce it again for your review.

Bill Wassweiler


Lindquist & Vennum PLLP
4200 IDS Center, 80 South Eighth Street
Minneapolis, MN 55402
Office: 612-371-3289 www.lindquist.com
<http://www.digitechbranding.com/lindquist/usercard.php?filename=lindqui
st-wwassweiler-lindquist-com-1201796842.png>

---

```
From: Monica Rieder [mailto:mrieder@lblawllp.com]
Sent: Friday, November 13, 2009 3:00 PM
To: William P. Wassweiler
Cc: Rodger M. Landau
Subject: Blue Cross Blue Shield of Minnesota/In re APX Holdings, LLC
```

Dear Mr. Wassweiler:

2

Exhibit 4
170

As you are aware, Landau & Berger LLP represents Richard K. Diamond, the Chapter 7 trustee for the substantively consolidated estates of APX Holdings, LLC, and eight other affiliated debtors (under the case number 2:06-10875-EC, Central District of California). The trustee is in the process of reviewing and objecting to claims filed in the APX cases. Your client, Blue Cross Blue Shield of Minnesota, filed a proof of claim in In re APX Holdings, LLC, on June 22, 2007, asserting a priority claim of $582,366.38. However, the proof of claim was not accompanied by any documentation. (I note that Blue Cross also filed two proofs of claim in the In re APX Logistics, Inc., bankruptcy case, one of which has been amended and the other of which has been disallowed as a duplicate. Even if these proofs of claim were allowed, they do not contain significant additional information – only your contact information and an unsupported single page chart of premiums.) Rather than filing a claim objection based on lack of evidence, we would appreciate it if your client would file an amended proof of claim with the appropriate supporting documentation. I realize that you provided certain documents in connection with the preference action filed against Blue Cross, but providing the specific information underlying the claim as part of an amended proof of claim would assist the trustee in evaluating your claim on the merits as well as permitting your client to comply with Federal Rule of Bankruptcy Procedure 3001.

Please let me know whether you plan to file a properly supported amended proof of claim, and, if so, please provide us with a copy.


Thank you,

Monica Rieder



Monica Rieder

Landau & Berger LLP

1801 Century Park East, Suite 1460

Los Angeles, CA 90067

Telephone:   (310) 557-0050 x125

Facsimile:   (310) 557-0056

NOTICES
IRS Circular 230 Notice: To ensure compliance with requirements imposed by the IRS, we inform you that, except to the extent expressly provided to the contrary, any federal tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

This e-mail message and any files transmitted with it are confidential and may be subject to attorney-client privilege or work-product protection, and should not be read or distributed by anyone other than an intended recipient. If you received this by mistake, please notify us by replying to the message, and then delete it.

NOTICES
IRS Circular 230 Notice: To ensure compliance with requirements imposed by the IRS, we inform you that, except to the extent expressly provided to the contrary, any federal tax

advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

This e-mail message and any files transmitted with it are confidential and may be subject to attorney-client privilege or work-product protection, and should not be read or distributed by anyone other than an intended recipient. If you received this by mistake, please notify us by replying to the message, and then delete it.

NOTICES
IRS Circular 230 Notice: To ensure compliance with requirements imposed by the IRS, we inform you that, except to the extent expressly provided to the contrary, any federal tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

This e-mail message and any files transmitted with it are confidential and may be subject to attorney-client privilege or work-product protection, and should not be read or distributed by anyone other than an intended recipient. If you received this by mistake, please notify us by replying to the message, and then delete it.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
Landau Gottfried & Berger LLP
1801 Century Park East, Suite 1460
Los Angeles, CA 90067

A true and correct copy of the foregoing document described **CHAPTER 7 TRUSTEE'S NOTICE OF MOTION AND MOTION FOR ORDER RECLASSIFYING PRIORITY CLAIM OF BLUE CROSS BLUE SHIELD OF MINNESOTA (CLAIM NUMBER 477, IN RE APX HOLDINGS, LLC); MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF MONICA RIEDER IN SUPPORT THEREOF**

will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

**I. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On 02/01/2010, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:
UNITED STATES TRUSTEE: ustpregion16.la.edf@usdoj.gov; Alvin Mar alvin.mar@usdoj.gov
CHAPTER 7 TRUSTEE: Richard K. Diamond, rdiamond@dkdg.com

☐ Service information continued on attached page

**II. SERVED BY U.S. MAIL OR OVERNIGHT MAIL** (indicate method for each person or entity served):
On 02/01/2010 I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.
BY U.S. MAIL
Honorable Ellen Carroll, U.S. Bankruptcy Court, Roybal Federal Building, rm 1634, 255 E. Temple Street
Los Angeles, CA 90012-3332
Office of the United States Trustee, Alvin Mar, Esq., 725 S. Figueroa Street, Suite 2600, Los Angeles, CA 90017
William P. Wassweiler, Esq., Lindquist & Vennum, PLLP, 4200 IDS Center, 80 South 8th Street, Minneapolis, MN 55402

☐ Service information continued on attached page

**III. SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on_____
___ I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| 02/01/2010 | Akhtiara Erskine | /s/ |
|---|---|---|
| Date | Type Name | Signature |